STATE OF IOWA, Appellee, v. AL LIECHTI, Appellant.

No. 40249.

MARCH 11, 1930.

*Robert J. Shaw,* for appellant.

*John Fletcher* and *Edwin Willcockson,* for appellee.

EVANS, J.—The date of the alleged offense was April 14,

1929. The evidence relied on by the State is wholly circumstantial. On the night of April 13th, O'Rourke parked his car on one of the business streets of Sigourney, at 12:10 A.M. The street extended east and west. The parking occurred on the north side of the street, at an angle of 45 degrees, and at a point some distance west of a street intersection, and 50 feet east of an alley, extending north and south through the block on the north side of the street. The car was parked without lights. Shortly thereafter, the defendant drove through the alley from the north, and turned east along the street in question. He failed to see O'Rourke's car, and collided with it, and inflicted injury thereto on its left side. This is the version of the accident given by the defendant himself to the officers. There was no other witness. Thereafter, the defendant drove out of town, following a primary road for a short distance. From the primary road he turned into a "side road," where he parked his car, and made it his lodging place for the rest of the night. Between 3:00 A. M. and 4:00 A. M., he was found here, sound asleep in his car, by the sheriff and the night watchman and three other witnesses.

The theory of the prosecution is that the defendant was intoxicated when found; that this fact would warrant the presumption or inference that he was intoxicated at the time that he collided with O'Rourke's car, a few hours earlier.

Several errors are assigned and argued. The more serious question in the case is whether the evidence is sufficient to sustain the conviction. There is no direct evidence of the defendant's condition at the time of the accident. The accident was of such nature as could have happened to a sober person. The parking of a car in the dead of night, upon the curb of a paved street, comparatively narrow, without lights, is a practical bid for trouble. The defendant promptly related the circumstances of the accident to the officers upon their first inquiry. These are not controverted by any other evidence. The evidence for the prosecution is concentrated upon the alleged condition of the defendant at the time of his discovery asleep in his car on the "side road." This is the major circumstance relied on. The claim for the prosecution is that the defendant was at that time

 in such an intoxicated condition as to disqualify him from driving an automobile at that time. From this circumstance a presumption or inference is contended for, that his then condition was a continuation of his former condition. The State is confronted here with the rule that a presumption does not travel backward. It looks forward only. This does not mean that the circumstance may not have its influence, in connection with other circumstances.

In this case, the evidence for the State as to the then condition of the defendant is involved in serious inconsistency, which should not be ignored. The defendant was found sound asleep in his car, and some energy was devoted by the sheriff to his waking. Two bottles of "near beer" were found in the car. It is not claimed that this content was intoxicating. Two empty bottles were found in the car. It is claimed that there was a smell of alcohol about these and about the breath of the defendant. The five persons present on this occasion testified as witnesses for the State. On the subject of the defendant's condition, their testimony may be briefly set forth. O'Rourke testified:

"Q. From the appearance and condition of the defendant there at that time, what would you say as to whether he had been drinking, previous to that time? A. I would say he appeared hazy."

Barnes testified:

"Q. Did you hear any question by the sheriff to the defendant, and the defendant make any statements by the defendant as to where he had been, or about the accident up on the square? A. Why, the sheriff asked the defendant what had happened, and the defendant told him he had had an accident: that he knew whose car he had run into, and named O'Rourke's car. Q. Did he state from what direction he had come? What did he say about the direction he had come from? A. He came out from the alley north and turned east, and didn't see the O'Rourke car sitting there in the street. Q. From the appearance of Mr. Liechti before he was awakened by the sheriff, and afterwards, and from his actions and conduct there, what would

you say as to whether or not he had been drinking previous to the time you saw him there? A. I would say that, at the time the defendant—immediately at the time the defendant was taken from the car, that he acted as though he might have been drinking.''

''Cross-examination.

''The defendant drove his car away from there, after the conversation. The sheriff told him to get in his car and drive it back to town. At that time, he had control of his body, and was competent to drive a car.''

R. G. Yoder testified:

''From the appearance and condition of the defendant after the sheriff had taken him from the car, I would say that he might have been drinking.''

''Cross-examination.

''Liechti drove his car away from there, at the sheriff's request. At the time the sheriff told him to drive his car home, he seemed to have full control of the acts and motion of his body.''

Sheriff Beasley testified:

''At the time I found the defendant there, I smelled liquor on his breath. The defendant's condition there was that he had been drinking, and he staggered around, when he first got out of the car, and I would say that he was drunk at that time. I found a pint bottle and a half-pint bottle empty, and there were two near-beer bottles in the car. I smelled of the empty bottles. The bottles smelled like what they call alcohol.''

''Cross-examination.

''After I had talked to him, he drove his own car home. I asked him to do that.''

Saner, night watchman, testified:

''Liechti had a couple of empty bottles in his car, and I smelled intoxicating liquor on Liechti at that time. At the time he was taken out of the car, I would say that he was intoxicated.''

''Cross-examination.

''I saw Al Liechti drive his car away from the place where

he was found, and Mr. Beasley told him. When I smelled liquor on Al Liechti's breath, I was right up close to him. The whole bunch of us was there. It might have been liquor from Barnes's breath, or it might not.''

It will be noted from the foregoing that only the sheriff and night marshal expressed an opinion that the defendant was *intoxicated* at the time of his discovery. Notwithstanding that fact, the sheriff directed the defendant to get into his car and drive it to town.

To say the least, the evidence in support of the alleged intoxication of the defendant at the time of his discovery is very unsatisfactory. This evidence and the earlier fact of the collision with a parked car constitute all the circumstances relied on for conviction. It cannot be said, we think, that the circumstances thus testified to are inconsistent with any other reasonable hypothesis than that of the guilt of the defendant three hours earlier. From this conclusion it follows that the motion of the defendant for a directed verdict should have been sustained.

The judgment below is, accordingly,—*Reversed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.