STATE OF IOWA, Appellee, v. WILSON HAMER, Appellant.

No. 43579.

SEPTEMBER 21, 1937.

Welch & Maher, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, Asst. Attorney General, and William M. Tatum, County Attorney, for appellee.

STIGER, J.—The grand jury of Harrison County returned an indictment against the defendant, Wilson Hamer, charging him with the crime of operating a motor vehicle while in an intoxicated condition. Defendant entered a plea of not guilty. At the close of the State's evidence, the defendant moved for a directed verdict which was overruled. The defendant then rested. The

jury returned a verdict against the defendant. Defendant filed a motion for a new trial which was overruled and judgment was entered on the verdict and sentence pronounced. Defendant appealed.

The single proposition urged on appeal is that the verdict is contrary to the evidence; that the evidence failed to establish (1) that the defendant drove an automobile at the time of the accident, and (2) that the defendant was intoxicated.

On the night of August 13, 1934, a collision occurred on a curve on highway No. 30 near Woodbine, Iowa, just west of a bridge, between a car owned and driven by W. L. Beedle and defendant's car in which he and another man were riding. The indictment is based on the circumstances of this collision.

The witnesses for the State were W. L. Beedle, C. F. Cross, sheriff of Harrison County, and Dr. Anderson.

The only evidence of the situation immediately before the collision was given by Mr. Beedle as follows:

"I first saw the defendant's car coming toward me when it was at the end of the bridge and not over ten steps away. I was making the turn going east and his car had just crossed the bridge. The two lights were reflected one against another and I don't think he could see, neither could I see, which way the car was coming on the turn there. The two lights were reflected right together in making that turn. We were sitting on the curb after the accident talking. He said, 'I couldn't see you because the two lights were blinding one another.' I told him I couldn't see him. He wanted to know what I was going to do about it and I asked him what he was going to do about it. He said, 'I will have your car fixed up.' "

According to this testimony on the part of the State the cause of the accident was the blinding lights. Beedle testified at the time of the collision the defendant was not intoxicated.

 To sustain the material allegation of the indictment that the defendant was operating his automobile the State relies on the testimony of Beedle and Sheriff Cross.

Beedle testified on direct examination that he thought the defendant was driving the car and later in his direct examination stated that there was another person in the car and he couldn't tell who was driving.

Sheriff Cross testified:

"I was at the Warman Oil Station about 9:30 p. m. August 14, 1934—Mr. Warman phoned me. Mr. W. L. Beedle and wife, Dr. Anderson, and Wilson Hamer were there and I think Carson Withey was with Hamer. I talked with Hamer and he said he was coming from the south and Mr. Beedle was coming from the north, and as Mr. Hamer turned in going off the road toward Woodbine they collided right on the turn."

On cross-examination, Cross first testified that the defendant told him that he was driving the car and could drive just as good as anybody. The following then occurred:

"Mr. Welch: At the time of the collision, right square toed on it?

"The Witness: I don't know. I wouldn't say that, that he told me, but he said he could drive the car just as good as anybody, and I told him he couldn't drive it."

On redirect examination the following question was asked and answer given:

"Mr. Tatum: Mr. Cross, on direct examination you stated, did you not, that he stated to you that he was driving the car at the time of the collision?

"The Witness: I just wouldn't know whether he told me that he was driving the car at the time of the accident or not, I wouldn't say about that, but he told me in his argument that he could drive that car just as good as anybody and I told him he couldn't drive that car and to go on home."

There are no inferences from the State's evidence that would substantially strengthen its probative value. A conviction on this issue, based solely on the self-contradictory statements of the State's witnesses cannot be permitted to stand.

■■■ On the issue of intoxication Beedle testified: "I talked for an hour or more with Wilson Hamer after the accident and he was not intoxicated; he talked just as anyone would after they had been hurt."

Doctor Anderson was called to the Warman Oil Station to care for the injuries received by the defendant and with reference to his intoxication testified:

"I asked him to sit down so that I could dress his arm. I had some difficulty in getting him to sit down. I looked up at

him to see what was the matter and discovered that he was somewhat intoxicated. At the time I was dressing his arm I did not notice anything in particular, but I heard the argument he had with the sheriff. I thought he was intoxicated and did not think it was safe for him to drive his car. He had coherency of talk, no odor of liquor, and no unsteadiness in his walk.''

Sheriff Cross testified:

''He was about all lit up with liquor—plenty drunk. He did a good deal of arguing about his own right to drive. He walked around and staggered some—not very much. I took two bottles of liquor and one about one quarter full from the car. He said, you just give me my liquor and I will go home and let it go at that. I did not let him drive home. He talked around awhile and finally Miller Prose took him home.''

The witness also testified that defendant's car was so damaged that it could not be driven to make any headway.

Beedle testified that the defendant was not intoxicated at the time of the collision. Apparently, defendant was slightly intoxicated when Dr. Anderson attended him at the oil station and was intoxicated to a greater degree when Sheriff Cross arrived.

On the issue of intoxication of the defendant the record is unsatisfactory. It doesn't disclose the time the accident occurred nor where it occurred with reference to the Warman Oil Station. All we know is, that the collision took place in the vicinity of Woodbine, west of the Boyer bridge. We do not know the location of the Warman Oil Station nor how much time elapsed from the time of the collision until Mr. Warman phoned for the sheriff and Dr. Anderson. Sheriff Cross states that he arrived at the oil station about twenty minutes after receiving the call. Beedle testified that it must have been a half hour before he saw Cross at the oil station. So the time that elapsed between the collision and the time Cross and Dr. Anderson reached the oil station is entirely a matter of conjecture. Defendant objected to the testimony of the State's witnesses that the defendant was intoxicated when they reached the oil station on the ground that the time was too remote from the accident. The defendant had access to the liquor in his car after the accident. The testimony of Cross and Anderson that the defendant was intoxicated when

they reached the oil station is consistent with the innocence of the defendant especially in the light of the testimony of Beedle that he was not intoxicated at the time of the collision.

Because of the uncertain length of time that elapsed between the time of the accident and the time the State's witnesses reached the oil station, the fact that defendant was intoxicated at the oil station when Anderson and Cross arrived to the degree testified by them has negligible probative force, especially when considered with the testimony of the State's witness, Beedle, that he was not intoxicated at the time of the collision.

No presumption arose that the condition of the defendant as testified to by Cross and Anderson was a continuation of his condition at the time of the collision. In the case of State v. Liechti, 209 Iowa 1119, 229 N. W. 743, the evidence of defendant's intoxication was circumstantial. The State offered evidence that the defendant was intoxicated a few hours after the accident and contended that from this circumstance a presumption arose that his then condition was a continuation of his condition at the time of the accident. The court states:

"The State is confronted here with the rule that a presumption does not travel backward. It looks forward only. This does not mean that the circumstance may not have its influence, in connection with other circumstances."

In the case of State v. Wise, 83 Iowa 596, 599, 50 N. W. 59, 60, we stated:

"One ground of the motion for a new trial is that the verdict is contrary to the evidence. The rule in such cases is different from that applied in civil cases. This court, though proceeding carefully and cautiously, will interfere in criminal cases more readily than in civil. We will not in a criminal case support a verdict if it be against the clear weight of the evidence."

This rule has been followed in our subsequent cases. State v. Reinheimer, 109 Iowa 624, 80 N. W. 669; State v. Saling, 177 Iowa 552, 159 N. W. 255; State v. McKenzie, 204 Iowa 833, 216 N. W. 29.

■■■ The evidence in this case is too lacking in affirmative force to establish beyond a reasonable doubt the guilt of the defendant. The burden was upon the State to prove that the defendant was driving the car and that he was intoxicated. It failed to establish either of these material allegations.

1134

We are constrained to hold that the evidence in this case is not sufficient to sustain the verdict. It follows that a reversal is necessary.—Reversed.

ANDERSON, MITCHELL, PARSONS, SAGER, KINTZINGER, RICHARDS, and DONEGAN, JJ., concur.