STATE, Respondent v. KLINGLER, Appellant

(173 N.W.2d 275)

(File No. 10492.   Opinion filed December 16, 1969)

R. James Zieser, Asst. Atty. Gen., Pierre, for plaintiff and respondent; **Gordon Mydland,** Atty. Gen., on the brief.

**Joe W. Cadwell,** Sioux Falls, for defendant and appellant; **Marvin D. Keller,** Sioux Falls, on the brief.

BIEGELMEIER, Presiding Judge.

Defendant appeals from the sentence entered on his conviction of robbery in the first degree. SDCL 1967, § 22-30-1 and

§ 22-30-6.  Shortly after 4 a. m. on May 17, 1967 a man held up a service station in Sioux Falls by use of a revolver.  The robber had dark hair, had not shaved for a couple of days, wore sunglasses, dark pants and an olive green jacket.  Jensen, the attendant who later identified defendant as the robber, phoned the police who arrived in a couple of minutes and the information was put out over the police radio.  All of the police officers hereafter named heard of the holdup and were working on it.  About 4:30 a. m. officers Konda and Nygaard talked to attendant McColey at another service station a mile away about this robbery.  The attendant advised them that around 3:45 a. m. two men in a brown and white 1957 Pontiac with Minnesota license plates were customers of the station.  One of them was wearing dark jeans and needed a shave.  Some of their actions aroused his suspicions so he had noted down the license numbers which he gave to the police.  He told them he thought the person the police described as the robber could be the same party who had just bought gas from him.  A few minutes thereafter he called the attendant at the station which was robbed and passed this information on to him.  He later identified defendant as one of the men in this car.

Police officer Kisecker heard of the robbery over the radio in his police car and about 5 a. m. while checking buildings for security noticed a car parked along some trucks in a private lot of a moving company.  As he rounded the corner it started moving forward and then turned its lights on.  After it pulled into the street he stopped the car; it was a 1957 white and coral Pontiac with South Dakota plates on it and two men in it.  One of them, with clothing similar to that of the driver of the Pontiac served by attendant McColey, was defendant Klingler.  He said they had been sleeping in the car, were unemployed and looking for work.  Officer Konda arrived in a police car and then officer Nygaard.  Officer Konda had the description of the robber, his height, weight and of his three-day beard.  After some conversation the two men were put under arrest for vagrancy.  Inside the Pontiac could be seen a number of boxes, a construction hat in the back window and sunglasses on the dash of the car.

Reaching through the open door the officers moved a loosely-fitted ventilated air cushion on the front seat and saw a .22 calibre revolver lying on the seat; a roll of pennies on the floorboard and currency and coins in a pocket of the left front air cushion. Two Minnesota license plates were noticed under the front seat. Photographs of the inside of the Pontiac taken from the outside with the doors open showing the pistol on the seat, the coins and license plates on the car floor were received in evidence. These items were discovered at the time the arrested men were being taken to the police cars nearby and the photographs were then taken. The robbed attendant testified the ivory and brown handled revolver was the one used by defendant in the robbery and the numbers on the Minnesota license plates were identical with those earlier given to the police by attendant McColey as being on the 1957 Pontiac.

Defendant asserts the admission in evidence of the revolver and photographs was erroneous and presents his contentions under four headings: (1) Did the police have probable cause to believe defendant had committed vagrancy, or (2) a crime other than vagrancy? (3) If they suspected he committed robbery, was the vagrancy arrest a pretext to the search? and (4) If no probable cause existed for a vagrancy arrest and it was a pretext used to justify a search, then the fruits of the search should have been excluded.

■ The discovery of the .22 calibre revolver under the ventilated cushion on the front seat formed the basis for a charge of violating 15 U.S.C. § 902(e), a section of the Federal Firearms Act, which prohibits a former convict, such as Klingler was proven to be, from transporting a firearm in interstate commerce. Upon conviction thereof in the United States District Court for the District of South Dakota he appealed to the United States Circuit Court of Appeals for the Eighth Circuit where his conviction was affirmed. Klingler v. United States, April 3, 1969, 8th Cir. 409 F.2d 299.. There the same search was challenged as illegal for similar reasons and arguments made here. The Court of Appeals, in an opinion by Judge Bright, discussed these contentions and because the opinion so far as it concerns this ap-

peal meets with our approval it will be much alluded to, though citations and some text will be omitted. We first dispose of the validity of the arrest on stated vagrancy grounds. The Court of Appeals determined "vagrancy was an unsuitable ground for the arrest"; for the purposes of this opinion and without detailing the evidence on that point we come to the same conclusion.

The Court of Appeals in dealing with the arrest wrote:

"A 'seizure can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant'. * * * In this case, if the search of the automobile and seizure of the pistol is to survive the proscription of the Fourth Amendment, it must be under the exception for searches incident to a lawful arrest. * * * The validity of such a search and seizure is dependent initially upon a lawful arrest, * * * the lawfulness of which is to be determined by state law insofar as the arrest is not violative of the Constitution. * * * The constitutional validity of an arrest is dependent upon the existence of probable cause. * * *

"Under South Dakota law, a peace officer may arrest without a warrant: (1) for a public offense committed or attempted in his presence; (2) when a felony has in fact been committed, and the officer has 'reasonable cause' for believing the person arrested to have committed it; and (3) at night on 'reasonable cause' even though it afterwards appears that a felony has not been committed. (SDC 1960 Supp. 34.1609, now SDCL 1967, § 23-22-7 and 8).

" 'Reasonable cause', as used in the above statute, is equated with the Fourth Amendment's requirement of probable cause.[1] * * * Probable cause exists where

---

1. Our court equated probable cause and reasonableness in State v. Hermandson, 1969, 84 S.D. 208, 169 N.W.2d 255.

the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime has been or is being committed.   *   *   *   Fourth Amendment protection requires that courts apply an objective standard in judging the officer's conduct. That interrelationship is stated in the 'stop-and-frisk' case of Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as follows:

'*   *   *   The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?   *   *   *'

"The details concerning a case which are furnished an officer via police radio[2] can be taken by him as reasonably trustworthy information upon which to base his actions.   *   *   *

"There was probable cause for Klingler's arrest for the felony charge of robbery. The robbery suspect was described as 'wearing a green jacket, a pair of sunglasses, and needing a shave'. Klingler was wearing an olive waistcoat, a pair of sunglasses was on the auto-

---

2. Police radio messages were the basis of stopping vehicles in Application of Kiser, infra, and State v. McCreary, 82 S.D. 111, 142 N.W.2d 240, and also arrest in McCreary.

mobile's dashboard, and he had two days' growth of beard. The automobile in which Klingler was a passenger, and one of two occupants, was a 1957 white and salmon or coral Pontiac, with South Dakota plates and two metal construction helmets visible through the back window. This substantially tallied with the description broadcast over the police radio. The factors that would have justified Klingler's arrest for robbery compare favorably with the facts in other cases in which we have approved warrantless arrests. * * * See also, Sewell v. United States, 406 F.2d 1289 (8th Cir., 1969) (criminals do change license plates)."

At this point we interpolate that while the statement as to wearing an olive green waistcoat and some other minor details do not appear in our record, the added verifying statements of attendant McColey appear here and are not specifically mentiond in the Bright opinion. His statements and those of Jensen to the officers may also be taken by them as worthy information upon which to base their actions. Discussing a statement not in this record except only that defendant was not then arrested for armed robbery, the opinion continues:

"Because probable cause for an arrest is determined by objective facts, it is immaterial that Kisecker, at the hearing on the motion to suppress, testified that he did not think that he had 'enough facts' upon which to arrest Klingler for armed robbery. His subjective opinion is not material. See, Terry v. State of Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A constitutional safeguard predicated on an objective standard requires an even-handed application. From the standpoint of the individual, the figurative zone protecting his privacy and personal integrity may be encroached under the law only by facts and circumstances totaling probable cause for arrest. See, Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Johnson v. United States, 333 U.S. 10, 14, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1948). From the standpoint of the government, application of the prin-

ciple of probable cause must allow room for some mistakes by the arresting officer. As Mr. Justice Rutledge stated in Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949):

'These long-prevailing standards [of probable cause] seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would be to leave law-abiding citizens at the mercy of the officer's whim or caprice.'

"\* \* \* The testimony suggests that Officer Kisecker made what appears to be an honest mistake in specifying the reason for arrest. The circumstances do not give rise to the inference that the arrest was effected for the purpose of creating an excuse to search, which would make both the arrest and search illegal under the principles enunciated in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 23 (1927). In this case, Officer Kisecker was on the lookout for the robbery suspects and he directed Klingler's arrest with knowledge of a robbery that had recently been committed. Objectively, the facts known to Kisecker prior to the arrest and search met the standard of probable cause. Notwithstanding the officer's mistaken statement of grounds, the existence of probable cause for a robbery arrest prevents the vagrancy arrest from being considered pretextual."

The court then considered whether the arrest was invalid because the arresting officer notified defendant he was under arrest for vagrancy rather than for armed robbery, quoting from SDC 1960 Supp. 34.1609, now SDCL 1967, § 23-22-9. That section provides:

"**Arrest by officer without warrant—Information as to authority and cause of arrest.**—When arresting a person without a warrant, a peace officer must inform him of his authority and the cause of the arrest, except when he is in the actual commission of a public offense, or is pursued immediately after an escape."

The court in Application of Kiser, 1968, 83 S.D. 272, 158 N.W.2d 596, held a warrantless arrest valid when the peace officer told defendant he was holding him for police who were on their way from a nearby town. It said the quoted statute provided no particular ritual to be followed and the notice was sufficient when it was such as to inform a reasonable man of the authority and purpose of the one making the arrest and the reason thereof. After mentioning this opinion the Court of Appeals continued:

"* * * Cases in this Court and in other jurisdictions on corresponding factual circumstances have held that an officer's statement of an unsuitable ground for arrest neither voids the arrest nor a search incidental thereto. For example, in McNeely v. United States, 353 F.2d 913 (8th Cir., 1965), the driver of an automobile was arrested for 'littering' by an officer who had not, in fact, seen the suspect throw anything from the vehicle. Judge Gibson, speaking for this Court, upheld the validity of the arrest. He observed:

'The law cannot expect a patrolman, unschooled in the technicalities of criminal and constitutional law, following the heat of a chase, to always be able to immediately state with particularity the exact

grounds on which he is exercising his authority. We believe that if the officer had probable cause to arrest and otherwise validly performed the arrest, he is not under the circumstances of this case required to immediately recognize and accurately broadcast the exact grounds for this action or suffer the arrest to come under constitutional criticism. Therefore, since Patrolman Walton had probable cause to believe the occupants of the car were engaged in felonious activity, the arrest of McNeely was valid regardless of the initially stated grounds for arrest.' 353 F.2d at 918.

\*　　\*　　\*　　\*　　\*　　\*

"The evident purpose of giving notice of the authority and cause for arrest is to establish a procedure that is likely to result in a peaceable arrest. Here, of course, Klingler knew that he was dealing with the Sioux Falls police. The officer stated a cause of the arrest. Even though the stated ground proved to be a mistake, Klingler had notice that the officers purported to act under authority of the law. Under these circumstances, we believe the requirements of the South Dakota statute were satisfied and that the arrest was, therefore, legal. The circumstances here are not such as to allow the criminal to go free 'because the constable has blundered'."

■ The court then addressed itself to the search in the following language:

"Reasonableness is the ultimate constitutional test of a search or seizure. \* \* \* 'The test of reasonableness cannot be stated in rigid and absolute terms', \* \* \* or determined by any fixed formula, but depends upon the facts and circumstances of each case. \* \* \*

"In Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), the Supreme Court stated that 'a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest'. ✻ ✻ ✻

"We hold that the seizure of Klingler's firearm was the result of a reasonable search incident to the lawful arrest. ✻ ✻ The search of the automobile in which Klingler was a passenger and the discovery of the firearm therein occurred only moments after the arrest and while Klingler remained at the scene. The weapon was a proper object of seizure as an instrumentality of the crime of armed robbery. ✻ ✻ ✻ This search of a motor vehicle was not remote in time or distance from the arrest and the fruits thereof are not to be excluded under the principles enunciated in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1966) and Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). ✻ ✻"

The reasoning of the Court of Appeals equally applies to this appeal and we conclude the challenged evidence was properly admitted by the trial court.[3]

This opinion could end here except for Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, decided June 23, 1969. There the court held the arrest of a defendant in his home under a warrant of arrest but without a search warrant did not authorize the officers to make a general search of the entire three-bedroom house. This court in State v. Nelson, July 24, 1969, 84 S.D. 218, 169 N.W.2d 533, cited among others the opinions in Preston[4] and Chimel, supra, and applied Preston by holding a search of a car in the sheriff's garage at two o'clock in the afternoon of the day after a 9:30 p. m. arrest on the highway some distance away was too remote in time and place to be

---

3.  Accord:  Cook v. Sigler, U.S.D.C.Neb., 299 F.Supp. 1338.
4.  In Preston the search was made after the car had been driven to the police station, the men in it booked and the car towed to a garage.

incident to the arrest. We see a distinction between a general search of the entire home, from attic and shop to bedroom, and an easily moved car found parked on private property not that of the owner at four o'clock in the morning. How then was it practicable to procure a search warrant or protect the property when the one officer was left alone with it? If one man held up one station, two suspiciously use a credit card at another, may not a third be operating in the truck and warehouse area ready to remove the car and evidence? Here the officer looked under the seat through the opened door and saw the license plates and by moving the loose-fitting air cushion observed the pistol and money. We believe the United States Supreme Court recognized the validity of such a search in Chimel in footnote 9 when it wrote:

"Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543; see Brinegar v. United States, 338 U.S. 169, 69 S.Ct. 1302, 93 L.Ed. 1879."

Our reliance on the Court of Appeals' decision in Klingler v. United States from which we have quoted extensively receives some support as the Supreme Court let the decision stand by denying certiorari on October 13, 1969, see Klingler v. United States, 396 U.S. —, 90 S.Ct. 127, 24 L.Ed.2d 110. Validity for the search may therefore be based on probable cause that defendant was the robber and the car he occupied was used in the robbery under the Carroll and Brinegar decisions. See also State v. Baych, July 24, 1969, Iowa, 169 N.W.2d 578.

The judgment appealed from is affirmed.

All the Judges concur.