STATE, Respondent v. BOSANCO, Appellant

(213 N.W.2d 345)

(File No. 11106. Opinion filed December 13, 1973)

**Robert B. Looby,** Pierre, for defendant and appellant.

**Kermit A. Sande,** Atty. Gen., **Camron Hoseck,** Asst. Atty. Gen., Pierre, **Ralph A. Kemnitz,** State's Atty., Philip, for plaintiff and respondent.

DUNN, Justice.

Appellant was convicted of DWI by a Haakon County Jury on November 23, 1971. In his appeal to this court appellant cites various assignments of error by the trial court in failing to suppress evidence and testimony of a blood alcohol test.

Appellant was driving his pickup in an easterly direction on Highway 14 about six miles west of Midland in the late afternoon of July 23, 1971. The exact time of this accident was never clearly established but the evidence did indicate it happened somewhere between 3:30 and 4:00 p.m. As the appellant approached the Konst ranch, the pickup veered into a couple of guard posts and a mailbox on the north side of the highway, and then crossed the road and into the ditch on the south side of the highway. John Konst saw the accident occur and immediately went to the scene and after checking on the appellant eventually took him into Midland. After a short stop at a filling station to determine if the authorities had been notified, Konst took appellant to his home. Konst testified that appellant had a bloody nose, but otherwise seemed normal and that he walked into his house without assistance. After his arrival home, and this according to appellant's testimony only, he drank a couple of ounces of 190 proof Everclear alcohol for a suspected heart condition. Shortly thereafter appellant lapsed into an unconscious state on the floor. His wife became alarmed and called an ambulance which transferred appellant to a Kadoka hospital. In response to a radio and telephone call from the sheriff of Haakon County, Mr. Pearson, Sheriff of Jackson County, went to the

hospital to interview the appellant. After introducing himself the Sheriff read appellant the Miranda warning from a card and also the implied consent law. After being given a choice under the implied consent law to either consent to the test or have his drivers license taken away for one year, appellant consented to a blood test which was taken by Dr. Swisher at the hospital at about 6:30 p.m. This blood test, which upon analysis tested .25 of alcoholic content in the blood, was introduced into evidence at the trial over the strenuous objection of the appellant.

■ A careful reading of the transcript would indicate that the appellant was never arrested or charged with any offense before consenting to the blood test. The best that Sheriff Pearson could say was that he advised appellant "that he would be charged with DWI", and that "I considered him to be under arrest when I read him the implied consent law. I didn't tell him he was under arrest", and at the preliminary hearing, in answer to the question "He was never arrested?" answered "No, I have nothing to do with that". In addition to this the appellant was never placed in jail and was released by the Sheriff of Haakon County without any appearance before a magistrate and without any bond after leaving the hospital on the evening of July 23rd. We know that there could not have been a valid arrest by the Sheriff of Jackson County because the alleged misdemeanor was not committed in his presence. SDCL 32-2-8, 23-22-7(1).

This Court in several cases has held that an arrest or a charge, either formal or informal, by a police officer previous to having a defendant make a choice under the implied consent law was sufficient, even though it later appeared that there was no valid arrest. State v. Batterman, 79 S.D. 191, 110 N.W.2d 139; State v. Werlinger, 84 S.D. 282, 170 N.W.2d 470; Holland v. Parker, 84 S.D. 691, 176 N.W.2d 54.

Since those cases were decided, and on February 15, 1973, a three-judge Federal\District Court has ruled the South Dakota implied consent law (SDCL 32-23-10) unconstitutional and one of the grounds for this ruling ₁was the statute's failure to definitely provide for a legal arrest previous to the choice being made by a

defendant on whether to take the blood test.* In that case the court stated: "However, even though an 'arrest' is contemplated by SDCL 1967, Sec. 32-23-10, that section does not insist upon a *lawful* arrest, nor has it been interpreted to demand such." State v. Batterman et al., supra. This court had occasion to consider the effect of the Federal decision in State v. Spry, 87 S.D. 318, 207 N.W.2d 504, decided on May 17, 1973. In that case the evidence of a blood test under SDCL 32-23-10 was upheld after a determination that there had been a legal arrest, prior to making a choice under the implied consent law.

 Lacking a legal arrest in this case and with considerable doubt as to whether there was ever any arrest valid or invalid, or any charge, formal or informal, prior to appellant making the choice of taking a blood test, this Court has no hesitancy in ruling that the evidence of blood test in this case should have been suppressed. Actually the blood test here is suspect for another reason. The driving which resulted in this charge occurred around 4:00 p.m. During the interval between 4:00 and 6:30 p.m., when the blood test was taken, appellant stated that he consumed a couple of ounces of Everclear alcohol for medicinal purposes. The record is not clear on this subject but certainly the state did not attempt to refute this testimony and did not even cross-examine the appellant on this point except as to the amount. Further, we have the evidence of John Konst that he delivered the appellant to his home after the accident, and that appellant walked into his home without incident. Some 30 minutes later (and after appellant states he consumed this quantity of alcohol) we know from the evidence that appellant collapsed on the floor of his home in an unconscious condition. The length of time between the actual driving incident and the blood test, while not fatal to the test, does place an additional burden on the State to insure that nothing occurred in the interim to influence the test. State v. Guthrie, 85 S.D. 228, 180 N.W.2d 143; State v. Hamer, 223 Iowa 1129, 274 N.W. 885; Blevins v. State, 38 Ala.App. 584, 90 So.2d 98.

 Respondent's argument that this was an actual consent

---

* Holland v. Parker, 354 F.Supp. 196. (D.S.D.1973)

instead of an implied consent, is not persuasive. The actual consent was given after he had been read the alternative to consent under the implied consent law of losing his drivers permit for one year. As stated in Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, "The situation is instinct with coercion—albeit colorably lawful coercion. *Where there is coercion there cannot be consent*". (emphasis supplied). Also see Holland v. Parker, supra. Respondents also contend that there was sufficient evidence of driving while under the influence of intoxicants in this case without the use of the blood test. This may or may not be true, but this court cannot doubt the prejudicial effect of a .25 blood test on the minds of a jury. Accordingly, we are of the view that the court erred to the defendant's prejudice in admitting evidence of the blood sample and the analysis of it, thus permitting the jury to consider the statutory presumption.

The judgment of the trial court is reversed.

WINANS and DOYLE, JJ., concur.

BIEGELMEIER, C. J., and WOLLMAN, J., dissent.

WOLLMAN, Justice (dissenting).

Because in my opinion the defendant did not properly raise the question in the trial court, we need not consider whether the holding in Holland v. Parker, D.S.D., 354 F.Supp. 196, would bar the admission of the results of the blood test in this case.

After the state had called one witness, defense counsel made an oral motion, completely unsubstantiated by any affidavit or other supporting papers, for the suppression of any testimony and evidence with reference to the results of the analysis of the blood sample taken from defendant. Defense counsel's motion stated in part that:

> " * * * Further, I believe that the evidence will show that the defendant was taken by the Sheriff into Midland and at that time no arrest was made of the defend-

ant, Mr. Bosanco, and that no blood test was extracted from the defendant at that time and that the blood test was not taken immediately thereafter and that therefore the remoteness of the blood test would not substantiate whether or not the defendant was under the influence at the time of the driving of the vehicle, that it would be so remote."

The trial judge quite properly denied this motion to suppress with the observation that he was unable to make any determination as to the admissibility at that time, adding that it might very well turn out that the blood test would be inadmissible.

Thereafter, defense counsel objected to testimony regarding the results of the blood sample analysis and to the introduction of the sample on the ground that no proper foundation had been laid and that the taking of the blood sample was too remote from the time that the defendant was observed driving his vehicle. As I read the record, defense counsel did not renew his motion to suppress upon the ground that defendant had not been placed under arrest prior to the time that the blood sample was taken.

Because the trial court was quite correct in denying the oral motion to suppress that was based on nothing more than defense counsel's assertions of what the evidence would show, any assignment of error based upon this ruling is without merit. I would hold that because defendant did not specifically include the lack of a prior arrest as one of the grounds of his objection to the introduction of the testimony regarding the results of the blood test and of the blood sample itself, he cannot now be heard to raise it for the first time on appeal. See State v. Olesen, 86 S.D. 367, 196 N.W.2d 362; State v. Halverson, 87 S.D. 110, 203 N.W.2d 421.

Also, I think that the state met its burden of showing that the blood sample was taken in accordance with proper medical procedures and that nothing occurred later to contaminate the sample. That being the case, the question of the effect of defendant's consumption of, according to his own testimony, one shot of Everclear alcohol on the results of the blood test was properly left to the jury, especially in view of the testimony of the

State Chemist concerning the absorption of alcohol into the blood stream after a person has had his last drink. I would hold that it was for the jury to determine the significance of the results of the blood test in the light of all of the circumstances of the case.

I would affirm the conviction.

I am authorized to say that Chief Justice BIEGELMEIER concurs in this dissent.