STATE of South Dakota, Plaintiff
and Respondent,

v.

William HACKNEY, Defendant
and Appellant.

No. 12005.

Supreme Court of South Dakota.

Argued April 27, 1977.

Decided Jan. 5, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Keith R. Smit and John T. Hughes of Morman, Smit, Shepard & Hughes, Sturgis, for defendant and appellant.

PORTER, Justice.

## CASE SUMMARY

This is an appeal from a conviction of second degree manslaughter. Defendant-appellant alleges that he was not under lawful arrest at the time police officers obtained a sample of his blood, that photographs inaccurately depicting the accident scene involved in this case were erroneously admitted in evidence, and that the results of the blood test should not have been admitted because it could not be shown with certainty that it was his blood sample. We conclude that defendant was under lawful arrest at the time the blood sample was taken, and that the photographs and blood sample were admissible. We, therefore, affirm the conviction.

## FACTS

At approximately 7:10 p. m. on August 7, 1975, defendant was involved in a motorcycle accident on Highway 385 in Lawrence County, when his motorcycle collided with another motorcycle ridden by Curtis Langel. At 7:15 p. m. David Scherer, jailer and deputy sheriff of Lawrence County, was called to the scene of the accident. He contacted the Deadwood Police Department dispatcher requesting an ambulance and additional police help, picked up the ambulance attendant, and drove to the accident site. They found two motorcycles hooked together on the northbound lane of traffic and observed defendant and Langel, who were injured and lying on the road. Deputy Scherer and Colleen Bachand, the ambulance attendant, began to administer first aid to them. By this time, Larry Schallenkamp, deputy sheriff of Lawrence County, and Richard Hagerty, a South Dakota Highway Patrolman, had arrived to help direct traffic and administer first aid. Defendant had injuries on his face and a broken leg; Deputy Scherer and Hagerty put an air splint on his leg, and a bandage on his face to control the bleeding. Langel did not seem to be improving, so Colleen Bachand and Deputy Scherer took him by ambulance to the hospital in Deadwood. Hagerty remained with defendant until a second ambulance arrived and defendant was then taken to the hospital. Hagerty and Schallenkamp remained at the site and proceeded with their investigation of the accident, clearing the road, making it safe for other travel, locating the point of impact, and taking statements from witnesses. Hagerty received a message that there was another bad accident several miles away, and responded to the call, leaving Schallenkamp in charge of the accident scene. Schallenkamp directed traffic and waited for a wrecker to pick up one of the motorcycles. After the road was cleared for travel, he gave a friend of one of the injured drivers a ride to the hospital. When they arrived at the hospital in Deadwood, Langel and defendant were being placed in an ambulance to be taken to the hospital in Rapid City. Langel died the next morning in Rapid City. Defendant was hospitalized in Rapid City and Hastings, Nebraska, for approximately three months, and went back

to work approximately seven months after the accident.

Defendant and two of his friends testified that he had been drinking in the morning on the day of the accident, but had nothing to drink for the rest of the afternoon. Witnesses to the collision testified that Langel was traveling north into a left-hand curve as defendant entered the curve from the north; defendant could not make the curve, and drifted into the northbound lane of traffic, colliding with Langel. Officer Hagerty and Deputy Scherer both smelled alcohol on defendant at the accident scene, and Hagerty requested that Schallenkamp take blood tests from both Langel and defendant. Blood was drawn from defendant by the medical technologist at the hospital in Deadwood and tests revealed a content of 0.14 percent alcohol by weight, which sample and test results were admitted in evidence at trial.

On the evening of the accident the investigating officers found gouge marks in the highway where the motorcycles had collided. They circled the marks on the highway with white chalk and attempted to take measurements. At approximately 9:30 the following morning Schallenkamp and Hagerty returned to the scene to take measurements and photographs, which were admitted in evidence at trial.

Defendant was subsequently tried by jury and convicted of manslaughter in the second degree. This appeal stems from that conviction.

## ISSUES

This appeal presents these issues:

*Issue One*—Was defendant under lawful arrest when Deputy Scherer requested and obtained a sample of his blood?

*Issue Two*—Did the trial court err by admitting photographs of the accident scene, which were taken on the morning following the day of the accident?

*Issue Three*—Did the trial court err by admitting the results of the blood test because it could not be shown with certainty to be defendant's blood sample?

## DECISION

### ISSUE ONE

We conclude that defendant was under lawful arrest when Deputy Scherer requested and obtained a sample of his blood.

In his brief and at oral argument defendant conceded that the officers had probable cause to arrest him without a warrant, because the officers testified that they smelled alcoholic beverages on his person and there was no doubt that he had been in an accident. *See* SDCL 32–23–1.1.[1] The precise issue is whether defendant was legally arrested.

The investigating officers testified that none of them arrested defendant at the scene of the accident. After defendant had been taken to the hospital in Deadwood, Deputy Scherer approached him and asked if he could take a blood sample from him. At the trial Scherer said, "I read Mr. Hackney his *Miranda* warning, and the State Implied Consent Law, advised him that he was under arrest for DWI, and that we would like to draw blood." The first statement of the implied consent warning given was, "I have arrested you for DWI, a violation of 32–23–1." Defendant consented to the blood test and the sample was taken. At the suppression hearing prior to the trial Deputy Scherer had testified that he had not placed defendant under arrest at the hospital because the arrest warrant was not issued until later and he did not take him into custody; but he stated that he had technically arrested defendant. On cross-examination at trial he clarified his earlier testimony as follows:

---

1. SDCL 32–23–1.1 provides:

   A law enforcement officer may, without a warrant, arrest a person for a violation of the provisions of § 32–23–1 [driving while under the influence of alcohol] when he has probable cause to believe that the person to be arrested has been involved in a traffic accident and has violated the provisions of § 32–23–1 and that such violation occurred prior to or immediately following such traffic accident.

Q In fact isn't it true to say that at the time at the hospital you had no intentions of arresting the defendant?

A No, that's not correct.

Q You mean just shortly before this trial you would tell my associate that you did not arrest him, but that at the hospital you did intend to arrest him?

A I told your associate I did not arrest him, as far as taking him into custody. I explained this to Mr. Hughes. It was my intention, as I've explained previously, to place Mr. Hackney under technical arrest, due to his injuries he was not in a position to be placed in jail.

Q What is a technical arrest, in your opinion?

A In my opinion it's advising someone that they are under arrest.

At the suppression hearing prior to the trial Deputy Scherer also testified that he continued the investigation of the accident after defendant had been moved to the hospital in Rapid City. He said he contacted the hospital the day after defendant was moved to Rapid City and instructed the employees to inform him when defendant was about to be released. He contacted the hospital twice to inquire about defendant's condition and release. On August 11, 1975, he signed a formal complaint charging defendant with second degree manslaughter and a warrant was issued for defendant's arrest. Subsequent to the issuance of the complaint and the warrant, defendant was released from the hospital. Because the hospital failed to inform Deputy Scherer of defendant's release, he was not arrested until he had returned home to Nebraska.

■ Defendant contends that Deputy Scherer's statement, "I have arrested you for DWI . . . " in the hospital in Deadwood was not sufficient to constitute a lawful arrest.[2] He conceded at oral argument that at the time the statement was made he understood what Deputy Scherer said to him and he knew he was not free to go, but contends that the officer did not have the requisite subjective intent to arrest him at that time. SDCL 23–22–9 provides: "When arresting a person without a warrant, a peace officer must inform him of his authority and the cause of the arrest, except when he is in the actual commission of a public offense, or is pursued immediately after an escape." In this case defendant does not contend that he was unaware that Scherer was acting in his official capacity as deputy sheriff, and Scherer clearly informed him that the cause of the arrest was driving while intoxicated.[3] SDCL 23–22–4 provides: "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer. The defendant is not to be subjected to any more restraint than is necessary for his arrest and detention." Defendant

2. Defendant cites *State v. Bosanco*, 87 S.D. 605, 213 N.W.2d 345 (1973), in support of his contention that he was not under lawful arrest prior to his consent to take the blood test. *Bosanco* is distinguishable in several ways. No valid arrest could have been made in *Bosanco* because the alleged misdemeanor involved in that case was not committed in the presence of the officer who tried to make the arrest, as statutory law at that time required. Also, the court in *Bosanco* stated:

A careful reading of the transcript would indicate that the appellant was never arrested or charged with any offense before consenting to the blood test. The best that Sheriff Pearson could say was that *he advised appellant "that he would be charged with DWI"*, and that "I considered him to be under arrest when I read him the implied consent law. I didn't tell him he was under arrest", and at the preliminary hearing, in answer to

the question "He was never arrested?" answered "No, I have nothing to do with that". *Id.* at 607, 213 N.W.2d at 346 (emphasis added).

In the present case the officer did not merely advise defendant that he *would be charged with DWI*, but rather he told defendant that he *had arrested him for DWI*. The blood test in *Bosanco* was suspect for an additional reason, because there was evidence that the appellant had consumed alcohol between the time of the accident and the taking of his blood sample.

3. Although Deputy Scherer originally stated driving while intoxicated as the ground for arrest and the formal complaint charged defendant with second degree manslaughter, the arrest was not void. *See State v. Spry*, 87 S.D. 318, 207 N.W.2d 504 (1973); and *State v. Klingler*, 84 S.D. 466, 173 N.W.2d 275 (1969).

admitted at oral argument that he knew he was not free to go. His consent to take the blood test is indicative of his submission to Deputy Scherer's authority. In light of defendant's injuries there was nothing more Scherer could have done to restrain him. He kept in touch with the hospital in Rapid City to see that defendant would be taken into custody upon his release. As long as defendant was in the hospital, no additional restraint was necessary to detain him.

SDC 1960 Supp. 34.1609 [now SDCL §§ 23–22–7 to 23–22–9], requiring an officer making an arrest without a warrant to inform the person being arrested the officer's authority and the cause of arrest, provides no particular ritual to be followed. The rule is satisfied if what is said and done makes clear why the arrest is being made. [Citations omitted] As a general rule, the notice is sufficient when it is such as to inform a reasonable man of the authority and purpose of the one making the arrest, and the reason thereof. Circumstances, without express words, may afford sufficient notice. *In re Application of Kiser*, 83 S.D. 272, 283, 158 N.W.2d 596, 602 (1968).

We conclude that what Deputy Scherer said and did in the present case made the reason for the arrest clear to defendant. By the time defendant consented to give the blood sample, he had been lawfully arrested and the results of the blood test were admissible.

## ISSUE TWO

▬ We conclude that the trial court did not err by admitting photographs of the accident scene.

We noted earlier that the photographs of the scene of the accident in this case were not taken until the following morning. Because the gouge marks on the highway made by the motorcycles could hardly be seen when the photographs were taken, defendant contends that the photographs were taken at a point in time too remote from the incident to accurately depict the scene. This court has stated that when admitting a physical article which is rationally probative of the issues in a case, the trial court

[M]ust be satisfied in reasonable probability that the article has not been changed in important respects. Permissible changes are such as are not likely to mislead the jury. McCormick on Evidence, page 384. In arriving at [its] conclusions [it] must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it. *State v. Christmas*, 83 S.D. 506, 510, 162 N.W.2d 125, 127 (1968).

The photographs in this case must be probative of the issues in the case, and their depiction of the accident scene must be substantially accurate. *See State v. Christmas, supra.* Deputy Schallenkamp testified at the trial that other than the light conditions and the fact that dirt and particles of motorcycle had been kicked off the highway, the conditions of the highway and the areas photographed were the same on the morning after as they were on the evening of the accident. He stated that the oil marks were still there, the chalk marks were still there, and although the gouge marks were not as visible, they could still be seen. The admissibility of the photographs was clearly within the discretion of the trial judge. *State v. Aschmeller*, 87 S.D. 367, 209 N.W.2d 369 (1973). Defendant does not claim that these photographs were not probative of the issues in this case. The testimony of Schallenkamp and Hagerty indicates that the depiction of the scene was substantially accurate. We conclude, therefore, that the trial court did not abuse its discretion by admitting the photographs in evidence.

## ISSUE THREE

▬ We conclude that the trial court did not err by admitting the results of the blood test.

Defendant contends that the State did not show with certainty that the blood sample admitted in evidence was his blood. At trial, Hicks, the medical technologist at the hospital in Deadwood, testified that he drew the blood from defendant. He placed

the blood in the tube, which the State provides for such purposes, and the tube was sealed and placed in a container. Defendant's name was then inserted on a card, which was placed in the mailing container along with the tube. The container was given to Deputy Scherer who mailed it to the State Chemical Laboratory in Vermillion, South Dakota. Although defendant's name was not placed on the tube itself, Deputy Scherer and Hicks both signed the seal on the tube.

As we noted earlier, to admit a physical article which is rationally probative of issues in a case, the trial court must be satisfied to a reasonable probability that the article has not been changed in important respects. *State v. Christmas*, 83 S.D. 506, 162 N.W.2d 125 (1968). In this case the trial court, in the exercise of its discretion, could reasonably infer that the blood in the tube, which was found in the container along with the card bearing defendant's name, contained defendant's blood. The officer and medical technologist both testified that the tube of blood and the information card were immediately placed in the mailing container. To exclude the blood sample because defendant's name did not appear on the tube itself, when the sample was properly identified on the accompanying card, would be hypertechnical. *See State v. Aschmeller*, 87 S.D. 367, 209 N.W.2d 369 (1973), and *State v. Thibodeau*, S.D., 233 N.W.2d 326 (1975). We conclude that the blood sample was admissible.

We, therefore, affirm defendant's conviction because he was under lawful arrest at the time his blood sample was taken, and the blood test and photographs of the accident scene were properly admitted in evidence.

Affirmed.

All the Justices concur.