STATE of Missouri,
Plaintiff/Respondent,

v.

James D. CUNNINGHAM,
Defendant/Appellant.

No. WD 45585.

Missouri Court of Appeals,
Western District.

Sept. 1, 1992.

James L. McMullin, Kansas City, for defendant/appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

Before LOWENSTEIN, C.J., and BERREY and ULRICH, JJ.

BERREY, Judge.

Defendant, appellant herein, was convicted in a court-tried case of Involuntary Manslaughter: Driving While Intoxicated, a Class "C" Felony. He was sentenced to seven years in the Missouri Department of Corrections. It is from this conviction and sentence appellant appeals.

On February 21, 1991, appellant was operating a blue Ford pickup eastbound on 24 Highway in Independence, Missouri. Witness William B. Burcham was operating his florist delivery truck at the same time and place and in the same direction as appellant. Burcham was on the inside lane of 24 Highway with appellant on his right. Burcham and appellant stopped for a red light at the intersection of 24 Highway and Susquena. When the light changed, both drivers proceeded east on 24 Highway. Burcham testified he was driving forty-five miles per hour, the posted speed limit at this location, and estimated the speed of the blue pickup at fifty miles per hour. At one point, when Burcham thought the pickup was too close to get in front of him, the pickup crossed part way into Burcham's lane and then returned to the outside lane.

Burcham testified that the next light, at the intersection of Jackson and 24 Highway, was red as he and appellant "topped the hill." Burcham began to slow his vehicle but "the blue truck just kept on going." The pickup struck "full speed" the rear of the car stopped for the light on 24 Highway at Jackson. Burcham testified that he could see the rear of the pickup and

its brake lights never came on. Burcham had seen the back of the pickup driver's head and could not identify him but could tell that he was a middle-aged man with greying hair.

The parties stipulated that the victim, Earl L. Roberts, died as a result of the injuries he received in the accident, to wit: transection of the thoracic aorta, fractures of the thoracic spine and ribs, bilateral hemothoracises and contusions of the lungs and heart.

The accident occurred about 2:05 p.m. on a dry clear day in February when the temperature was about sixty degrees. Douglas Poole, police officer for Independence, Missouri, investigated the accident and testified there was extensive damage to the rear of the 1986 Chevrolet Celebrity and to the front of the pickup. His investigation revealed nine feet of skid marks leading up to the accident.

Poole testified that it took emergency personnel about twenty minutes to extricate appellant from the pickup and that he did not talk to appellant at the scene. Poole took several photographs of appellant after he was removed from his vehicle while he was being treated by the paramedics. Poole also took a photograph of the interior of the pickup cab, which showed the cab contained "trash, paperworks, a plastic caulking device and cement glue, beer cans."

Following his extrication from the pickup, appellant was transported by ambulance to Liberty Hospital, Liberty, Missouri. After Poole completed his investigation, he proceeded to Liberty Hospital and talked to appellant at about 3:40 p.m. This was the first conversation Poole had with appellant. Poole noted a "strong odor of alcohol" on appellant's breath and that appellant's speech was slurred. Appellant refused Poole's request to allow a blood sample to be drawn for determining its alcohol content.

Poole went to the Clay County prosecutor's office and received assistance in preparing an application and affidavit for a search warrant, which Poole executed. The application and affidavit were presented to Judge Bills of the Circuit Court of Clay County, and he issued the search warrant to obtain a sample of appellant's blood.

On appeal, appellant raises two points of error: (1) the trial court erred in failing to sustain defendant's motion to suppress the search warrant because the affidavit is insufficient and fails to establish probable cause to issue the search warrant, and (2) the trial court erred in failing to sustain defendant's motion for judgment of acquittal, the evidence being insufficient to sustain conviction.

■ Officer Poole's affidavit contains information that appellant operated a vehicle that struck the rear of another vehicle with sufficient force to cause fatal injuries to the driver and that one hour and forty-five minutes later, when appellant was in an x-ray room at Liberty Hospital, the officer smelled a strong odor of alcoholic beverage on appellant's breath.

Both appellant and respondent cite *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), as authority for their respective positions. In *Gates* the Supreme Court set forth a new yardstick for measuring probable cause referred to as the "totality of the circumstances." In the instant case, the issuing judge knew there had been a rear-end collision with such force that the driver of the rear-ended car was killed and that one hour and forty-five minutes later, the driver of the pickup that rear-ended the car had a strong odor of alcohol on his breath. From the totality of these circumstances it is possible for the judge to determine probable cause existed for issuing the search warrant to draw appellant's blood.

Appellant orally argued to this court that the affidavit stated appellant was in police custody when he was not. This misstatement by the prosecuting attorney and Poole is *de minimis* and, in any event, no reference to this claim is contained in appellant's brief. We, therefore, will not address this issue further. Rule 84.04.

Appellant claims the search warrant itself is defective because the form warrant the judge signed alleged the blood was "unlawfully stolen." The failure to strike

the alleged offending language, "unlawfully stolen," does not render the search warrant invalid. It does point out the importance of the issuing judge scrutinizing the language in every warrant he issues.

The appellant cites *State v. Phillips*, 532 S.W.2d 533 (Mo.App.1976), as being supportive of his position. The *Phillips* court quotes the United States Supreme Court as stating, "affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.... Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Id.* at 535 (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). Police officers are encouraged to obtain search warrants and affidavits should be interpreted in a common sense manner. *State v. Dobbs*, 827 S.W.2d 724 (Mo.App.1992).

The affidavit, when read in its entirety and comprehended, is not "bare-bones" as appellant alleges. The issuing magistrate used common sense in interpreting the information he had before him and executing this search warrant; i.e., a rear-end collision of such force one party was killed, strong odor of alcohol on other driver's breath one hour and forty-five minutes later, and that driver receiving medical care at the local hospital.

Appellant also relies on *State v. Hammett*, 784 S.W.2d 293 (Mo.App.1989). Again, his reliance is misplaced. In *Hammett*, the search warrant was issued based on fourth-hand hearsay from individuals whose reliability had not been tested and was unknown to the officer making the affidavit. The court ruled that under the "totality-of-the-circumstances analysis" set forth in *Gates*, there was no probable cause to issue the warrant. There is no hearsay in Poole's affidavit. The information contained in Poole's affidavit is from his own personal knowledge. *Hammett*, therefore, is not applicable.

Appellant's Point I is denied.

■ In Point II appellant alleges the trial court erred by denying his motion for acquittal. He argues the evidence was insufficient to sustain the conviction because his blood was not obtained until three hours and thirty-five minutes after the accident. Appellant claims the state failed to prove he was legally intoxicated at the time of the accident.

Appellant relies on a rule that presumptions do not travel backward, they only look ahead. *State v. Liechti*, 209 Iowa 1119, 229 N.W. 743 (Iowa 1930). Appellant also cites *State v. Dodson*, 496 S.W.2d 272 (Mo.App.1973), to support his theory regarding presumption. In *Dodson* the evidence showed that Dodson had several beers between 3:00 p.m. and 5:00 p.m. He headed home about 7:00 p.m. Shortly before 9:00 p.m., he ran off the road into a ditch. A passing motorist, Cotton, assisted Dodson out of his vehicle, into his own vehicle and drove Dodson home. At about 9:40 p.m., a sergeant of the State Highway Patrol went to Dodson's home and interrogated him about the accident. The sergeant testified Dodson had blood shot eyes; thick, incoherent speech; was unsteady on his feet; and smelled heavily of alcohol. Dodson testified he was so shaken up by the accident that when he got home he took "three big drinks of whiskey" and laid down to rest. Additionally, Cotton testified that, while he could not say definitely that defendant was not intoxicated, when he helped defendant out of his car he detected no odor of alcohol, defendant was able to walk by himself and gave no sign or smell of having consumed alcohol. *Id.* at 272–73.

This court reversed Dodson's conviction of driving while intoxicated because the state failed to prove he was intoxicated at the time of the accident. *Id.* at 275. In *Dodson*, however, the defendant was found at his home where he had ample opportunity to drink whiskey. In the case at bar, appellant sustained injury in the accident and was transported by ambulance to the hospital, where he remained until Officer Poole talked with him and noticed the smell of alcoholic beverage on his breath. It can be logically inferred that appellant did not have an opportunity to consume any alcoholic beverages during this period of time.

The facts in *State v. McKenzie*, 204 Iowa 833, 216 N.W. 29, 31 (1927), and *State v. Liechti*, 209 Iowa 1119, 229 N.W. 743 (1930), cited by appellant, are factually so similar to *Dodson* that it would be redundant to set forth the facts here. Those cases hold that the state must demonstrate that the driver was intoxicated at the time of the accident. A showing of intoxication hours after the accident, with no other evidence, will not establish that the driver of a motor vehicle was intoxicated when the accident occurred.

The facts in *State v. Kusch*, 712 S.W.2d 457 (Mo.App.1986), are remarkably similar to the instant case. A fatal accident occurred at about 4:30 a.m. Accident reconstruction placed the Kusch vehicle so far on the wrong side of the road the right side of his vehicle struck the right side of the other vehicle. He survived and was taken to the hospital where blood samples taken at 7:00 a.m. showed Kusch had a blood alcohol content of .10 percent. This court sustained Kusch's conviction for two counts of manslaughter. *Id.*

In the instant case the appellant's blood had a "0.375 ethyl alcohol" content. Although the statutory definition of driving while intoxicated does not include a threshold level of alcohol in a driver's blood, a blood alcohol content of .11 percent has been held sufficient to sustain conviction for driving while intoxicated within the meaning of § 577.010.[1] *State v. Waelterman*, 733 S.W.2d 497, 498 (Mo.App.1987).

A person commits the crime of involuntary manslaughter if he:

....

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating acts with criminal negligence to cause the death of any person.

§ 565.024.1. Missouri statute defines "intoxicated condition" as "under the influence of alcohol, a controlled substance, or drug, or any combination thereof" and "operates" as "physically driving or operating ... a motor vehicle." § 565.002(4), (5). The state must prove beyond a reasonable doubt that the defendant was an intoxicated driver who operated a motor vehicle with criminal negligence and caused the death of another person. *State v. Lewis*, 735 S.W.2d 183, 185 (Mo.App.1987). Circumstantial evidence may be used to prove these elements. *State v. Davison*, 668 S.W.2d 252, 254 (Mo.App.1984).

A person 'acts with criminal negligence' or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. § 562.016.5. The circumstantial evidence from which the trier of fact concluded the appellant operated his motor vehicle while intoxicated is overwhelming. Just prior to the accident the appellant's vehicle was observed crossing lane lines as he approached the intersection of 24 Highway and Jackson. His speed was in excess of the posted forty-five miles per hour speed limit. He passed a vehicle that was traveling forty-five miles per hour and that driver estimated appellant's speed at fifty miles per hour. As appellant approached the intersection, the traffic signal was red against him. A witness testified that appellant continued to accelerate and that his brake lights did not come on. Appellant failed to keep a proper lookout, as evidenced by the fact that he rear-ended the Roberts vehicle. From all this evidence, coupled with the slurred speech and strong odor of alcohol on appellant's breath following the accident, Officer Poole had probable cause to believe that appellant was intoxicated at the time of the accident.

It must be stated that, although one hour and forty-five minutes had elapsed between the time of the accident and Poole's observation of appellant in the x-ray room at Liberty Hospital, it is reasonable to believe that appellant was under continuous observation by either emergency rescue personnel, ambulance attendants, or physicians. The accident occurred at 2:05 p.m. and it took about twenty minutes to extricate appellant from his pickup following the arriv-

---

1. Unless otherwise specified, all statutory references are to RSMo 1986.

al of the emergency personnel. He was then transported, by ambulance, from the scene of the accident in Independence, Missouri, to Liberty Hospital, some miles to the north. Although we do not know when appellant arrived at Liberty Hospital, Poole saw him there in an x-ray room at about 3:40 p.m. Poole requested that appellant submit to having a blood sample drawn. Appellant refused and Poole proceeded to obtain the search warrant. The evidence is sufficient in this case to establish that the defendant was operating a motor vehicle in an intoxicated condition at the time of the fatal accident.

Appellant's Point II is denied.

Judgment affirmed.

All concur.