STATE, Respondent v. GLICK, Appellant

(201 N.W.2d 867)

(File No. 11083. Opinion filed November 7, 1972)

**Willy, Pruitt, Matthews & Jorgensen, Steve L. Jorgensen,** Sioux Falls, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **George Weisensee,** State's Atty., Sioux Falls, for plaintiff and respondent.

HANSON, Presiding Judge.

Defendant, John K. Glick, appeals from his conviction of robbery in the first degree contending a revolver, ammunition, and currency obtained from his person by the police should not have been admitted in evidence.

With particular reference to the principal issue presented the evidence shows that about 7:50 in the evening of November 7, 1970, a man armed with a revolver entered the Fina Gas Station in Sioux Falls. At gunpoint he obtained $176.23 from the attendant, Teresa Ziegler. (At the trial Teresa positively identified defendant as the armed robber.)

The same evening, in response to a call, a cabdriver picked up the defendant at the Arrow Bar between 8:15 and 8:45. The Arrow Bar is located about two blocks away from the Fina Gas Station. The cabdriver took defendant to a private residence at Second and Mable Avenue. On the way defendant had the cabdriver stop at a liquor store where he purchased a bottle of liquor and the two shared a drink. During the course of the ride defendant stated he didn't want to get picked up or didn't want any trouble with the police or something to this effect.

Shortly after the robbery was reported Sergeant Eugene Horst, a detective on the Sioux Falls Police Force, was notified and ordered to report for duty. When he arrived at the Police Station he received information about the robbery and a description of the suspect. Sergeant Horst and another officer then went directly to a private residence located at 724 North Mable Avenue. The officers arrived between 9:15 and 9:45 p.m. The house was rented or occupied by Velma Kuhnert and her family.

Sergeant Horst knocked on the door and after identifying himself was admitted into the house by a 12-year-old girl. After entering the house he observed defendant approximately six or eight feet away sitting in the kitchen with two other persons. The officer identified himself and had defendant stand and submit to a "pat and frisk" search. In patting down defendant's clothing, Sergeant Horst discovered and removed a clip of shells from defendant's coat pocket and an automatic revolver from his waistband belt. Sergeant Horst then informed defendant he was under arrest for carrying a concealed weapon and was advised of his constitutional rights.

The officers took defendant to the Police Station where Sergeant Horst again advised defendant of his constitutional

rights. After some interrogation defendant was searched and the following items were found on his person: a wallet containing a selective service card identifying defendant, some miscellaneous papers, a pocket knife, a comb, sixty-five cents in coins, and $144.00 in currency. After this interrogation and search defendant was charged with the crime of First Degree Burglary in addition to the charge of carrying a concealed weapon. The items taken from defendant were tagged by the officers, placed in a brown manila envelope containing a typewritten description of its contents together with the names of the witnessing officers, viz., Lt. Renli, Sgt. Horst, and Deputy Sheriff Vander Maten. The envelope was then sealed and put in the property room at the Police Station where it remained until time of trial.

After his case was called for trial but before the jury was selected defendant moved the court to restrict the State from making any reference to the weapon and currency found on his person because of the police officer's failure to comply with SDCL 23-16-1 which provides:

"When money or other property is taken from a defendant arrested upon a charge of having committed a public offense, the officer taking it must, at the time, give duplicate receipts therefor, specifying particularly the amount of money or the kind of property taken; one of which receipts he must deliver to the defendant, and the other of which he must file with the court in which the defendant is triable."

This statute has been part of our criminal code since territorial days. See 1887 Compiled Laws of Dakota, § 7594. Its primary purpose is to protect the owner's rights in money or property taken from a defendant by making law enforcement officers accountable for all money and property withheld as evidence. It also incidentally serves as identifying proof that money or property seized at time of arrest is in fact the same money or property offered in evidence.

In the present action defendant does not contend he was prejudiced in any manner by the failure to receive a receipt for

the money, weapon and shells taken from him by the police officers. He merely asserts the technical failure to comply with SDCL 23-16-1 should result in the automatic suppression of such evidence. We cannot agree.

Our receipt statute is directory and ministerial in nature. As a matter of good police practice it should be strictly followed. However, the mere failure to comply does not render the seizure of evidence unlawful or inadmissible. See the following cases in which the failure to give a receipt for evidence obtained under a search warrant was held not to void the effectiveness of the search or contaminate the evidentiary value of the property seized. People v. Di Polito, 61 Misc.2d 65, 304 N.Y.S.2d 868; Fitez v. State of Maryland, 9 Md.App. 137, 262 A.2d 765; State v. Cherry, Tex.Civ. App., 387 S.W.2d 149; People v. Phillips, 163 Cal.App.2d 541, 329 P.2d 621; State v. Brochu, Me., 237 A.2d 418, and see 79 C.J.S. Searches and Seizures § 84, pages 906, 907.

The crime in this case was committed between 8:00 and 8:30 p.m. on November 7, 1970. Less than two hours later defendant had been found, searched, and arrested. This signifies excellent police work. Defendant, however, says the Constitution condemns it. In particular, he contends the police had no search warrant therefore the evidence seized can only be sustained as an incident to a lawful arrest. He further asserts his arrest without a warrant was unlawful because there was no proof of probable cause to support it. We agree with defendant's summary of the law of search and seizure, but deny its application here.

An arrest is the taking of a person into custody in order that he may be held to answer a criminal charge. For an arrest to be lawful, the officer must have a warrant of arrest or "reasonable" or "probable" grounds to believe the person arrested had committed or was committing a crime. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. To establish "probable cause" proof beyond a reasonable doubt is not required. "On the other hand, good faith on the part of the

arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed * * * suspicion is not enough". Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, the court pointed out that if the same evidentiary standards for determining guilt were applied to the issue of probable cause an officer, charged with the protection of the public, could not effectively act. The court then stated the proper standard by which probable cause should be determined as follows: "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." See also State v. Klingler, 84 S.D. 466, 173 N.W.2d 275.

■ Proof of reasonable or probable cause in the present action can be briefly summarized. Immediately after the robbery was reported the Sioux Falls police started investigating. They went to the Fina Gas Station and interviewed the attendant, Teresa Ziegler. She was taken to the Police Station for further interrogation. When Sergeant Horst reported for duty at the Police Station he obtained the following information:

1.  The Fina Gas Station had been robbed.

2.  The robber was armed with a revolver.

3.  A description of the suspect.

4.  A description of the clothing worn by the suspect, and

5.  Other information.

Based upon all the facts and information about the robbery and the suspect which he had obtained, Sergeant Horst went directly from the Police Station to the house at 724 North Mable Avenue where defendant was found. Sioux Falls has a population of over

*70,000 persons.* To enable Sergeant Horst to go unerringly to the one house in the city where defendant was a casual visitor he had to be armed with more than a suspicion. He necessarily had to have some reliable information concerning defendant's whereabouts. The record would logically and reasonably sustain a finding of probable cause for the apprehension and arrest of defendant without a warrant by Sergeant Horst, but we do not have to rest our decision on this basis.

■ Defendant did not move to suppress the evidence relating to the articles taken from him before trial. Neither did he move for a voir dire hearing during trial. His first objection on constitutional grounds was made when the articles were offered in evidence. During the trial the State was frustrated in its effort to prove "probable cause" by defendant's numerous objections as illustrated by the following portions of the record:

"Q Going to the particular house, had you received some report of the robbery that had taken place at the station?

A Yes, I had received a call at my home from Lieutenant Renli, first advising me....

MR. JORGENSEN: I object to any conversation this defendant might have had or this witness might have had with Lieutenant Renli as being hearsay.

THE COURT: Sustained.

\* \* \* \* \* \*

Q All right, and then what else did you do?

A I also received some other information through the radio room at the Police Department that a subject matching the description . . . . . . . . . . . . .

MR. JORGENSEN: I object to any information he received from the radio room as being hearsay testimony.

THE COURT: Sustained."

Under the circumstances defendant's right to object to the introduction in evidence of the gun, ammunition, and currency because of its alleged illegal seizure was waived by failure to timely move to suppress such evidence before trial and failure to move for a voir dire hearing during trial. State v. Merrill, 82 S.D. 609, 152 N.W.2d 349; State v. Poppenga, 76 S.D. 592, 83 N.W.2d 518; State v. Jackson, 61 S.D. 499, 250 N.W. 55; and State v. Newharth, 50 S.D. 272, 209 N.W. 542. Defendant knew long before trial the State had possession of the articles seized and would no doubt offer them in evidence. Good cause for failure to timely move to suppress such evidence was not shown.

■ Defendant finally contends the evidence is insufficient to sustain the verdict because of discrepancies in the description of defendant's jacket by the attendant, Teresa Ziegler. These were minor testimonial inconsistencies for resolution by the jury as a matter of credibility. A review of the entire evidence shows proof of defendant's guilt of the crime charged beyond a reasonable doubt.

Affirmed.

All the Judges concur.