**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Armand MAX, Defendant and Appellant.**

**No. 11896.**

Supreme Court of South Dakota.

March 20, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Steven M. Johnson and John R. Kabeiseman, of Brady, Kabeiseman & Reade, Yankton, for defendant and appellant.

PORTER, Justice (on reassignment).

## CASE SUMMARY

This is an appeal from a judgment upon a conviction of assault with a dangerous weapon without the intent to kill. SDCL 22–18–11.[1] Defendant-appellant's conviction resulted from a shooting incident, when shots were fired into the street from a residence in Yankton, South Dakota. Defendant asserts error in the denial of his motion to suppress a sawed-off .22 caliber rifle, spent .22 caliber shells, and a window screen with holes resembling bullet holes, obtained in a warrantless search of his apartment by law officers immediately after their forced entry of his apartment and their warrantless arrest of defendant within the apartment. We conclude that exigent circumstances justified the warrantless intrusion into the apartment, that the items were properly received in evidence, and that the judgment of conviction should be affirmed.

## FACTS

At 11:28 p. m. on May 10, 1975, a Yankton police officer was summoned to 508 Broadway to investigate possible sniper fire. He got out of his car and walked to the nearby service station to ask the attendant if he had heard any noises, when "a shot whistled by" him on his right. The men took cover. When another shot pierced the windshield of the attendant's car, the officer radioed the police department for help. The officer observed that the shots were coming from the northwest corner of the block. The sheriff's department, highway patrol, and off-duty officers responded to the officer's call. They set up a roadblock, and began investigating the area from which the shots came. Neighbors said they had previously observed some young people discharging fireworks or firearms in the area of a nearby garage. Some spent .22 caliber shells were discovered in the yard area between the house and the garage. As an officer walked from the back yard toward the front yard he shined his flashlight over the screen of one of the second floor windows of the house. He could see holes through the screen, which he believed to be bullet holes. The occupants of the main floor of the building had said that they had heard quite a bit of noise in the upstairs apartment earlier. Several officers then went to the apartment on the second floor, knocked on the door several times, and entered. The first officer through the door observed the appellant and his companion lying on the bed, apparently asleep. The officer noticed another door in the corner of the room and went to it to see if there were any other people in the apartment. He shined his light through the door into the next room, which was the bathroom, and observed a weapon on the floor by the bathtub. He took the weapon, a .22 caliber sawed-off rifle, into custody.

---

1. This statute was repealed by the 1976 S.D.Sess.Laws, and its provisions have been incorporated in SDCL 22–18–1.1.

By this time the other officers had arrested and handcuffed the two suspects. One of the officers observed some spent .22 caliber shells in the window well and they were taken into custody as evidence. The suspects were taken to the police department, interrogated, booked, and jailed. Two officers then returned to the apartment and removed the screen with the holes from the window for evidence.

## ISSUE

The issue presented to us on appeal is: Did the actions of the police officers violate the appellant's right of protection from unreasonable searches and seizures under the United States Constitution and the South Dakota constitution, thus invalidating the admission of the seized items into evidence?

## DECISION

We conclude that the appellant's fourth amendment rights were not violated and the trial court did not err in admitting the evidence seized.

The fourth amendment to the United States Constitution and Article VI, § 11 of the South Dakota constitution both provide that people have the right to be secure in their persons, houses, papers, and 'effects, against unreasonable searches and seizures. Warrantless arrests and searches, therefore, are unconstitutional, unless there is a showing by those who seek exemption from the warrant requirement that their actions were reasonable, based on probable cause, and that the exigencies of the situation made the course imperative. *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948); and *Coolidge v. New Hampshire*, 403 U.S. 443, 454–64, 91 S.Ct. 2022, 2031–37, 29 L.Ed.2d 564, 575–82 (1971).

Although the reasonableness of each case must be decided on its own facts and circumstances, some guidelines have been established for determining when exigent circumstances exist, justifying a warrantless intrusion for search or arrest. Considerations that are particularly relevant are as follows:

1. That a grave offense is involved, particularly a crime of violence;

2. that the suspect is reasonably believed to be armed;

3. that a clear showing of probable cause exists, including "reasonably trustworthy information," to believe that the suspect committed the crime involved;

4. that there is a strong reason to believe that the suspect is in the premises being entered;

5. that a likelihood exists that the suspect will escape if not swiftly apprehended;

6. that the entry, though not consented to, is made peaceably; and

7. time of the entry.

*Dorman v. United States*, 140 U.S.App.D.C. 313, 320–21, 435 F.2d 385, 392–93 (1970); and *Salvador v. United States*, 505 F.2d 1348, 1351–52 (8th Cir. 1974). The exigent circumstances doctrine is to be applied to the facts as perceived by the police at the time of entry, not as subsequently uncovered. *Brooks v. United States*, 367 A.2d 1297 (D.C.-1976). This court has also recognized an exception to the warrant requirement when an emergency exists. *State v. Cundy*, 86 S.D. 766, 770, 201 N.W.2d 236, 239 (1972), *cert. den.* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973), citing *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948).

When an intrusion by police officers is justified, a warrantless arrest can be made if the arresting officers are shown to have been acting on facts constituting "probable cause." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964); and *State v. Klingler*, 84 S.D. 466, 471, 173 N.W.2d 275, 279 (1969). The basic test of probable cause is whether "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution" in the belief that the suspect had committed or was committing an offense. *Draper v. United States*, 358

U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959); *State v. Glick*, 87 S.D. 1, 201 N.W.2d 867, 869 (1972); and *State v. Hermandson*, 84 S.D. 208, 213, 169 N.W.2d 255, 258 (1969). SDCL 23–22–7 provides that a peace officer may, without a warrant, arrest a person when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

A search incident to a lawful arrest is an additional exception to the warrant requirement, if the search is limited to the constitutionally permissible scope. Although the search incident to an arrest is reasonable only if limited to the arrestee's person or areas within his immediate control, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), police entering a house to make an arrest have the right to search the premises for other suspects whom they have reason to believe would be present. *People v. Block*, 6 Cal.3d 239, 244, 103 Cal. Rptr. 281, 284, 499 P.2d 961, 965 (1971). Also, if they inadvertently observe evidence which is in plain view of an officer who has a right to be in the position to have that view, that evidence is subject to seizure. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971); *State v. Strickland*, 87 S.D. 522, 526, 211 N.W.2d 575, 578 (1973); *State v. Larkin*, 87 S.D. 61, 65, 202 N.W.2d 862, 865 (1972); *State v. Palmer*, 5 Wash.App. 405, 410, 487 P.2d 627, 630–31 (1971). The search must be contemporaneous in time and place with the arrest, *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Even some searches which take place subsequent to the booking process may be upheld as "incidental" to the arrest, however, if they could have been made on the spot at the time of the arrest. *United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771, 775 (1974).

■ If the facts in this case are analyzed in light of the factors presented in *Dorman*, *supra*, we conclude that there were exigent circumstances justifying the warrantless intrusion. Random shots had emanated from the area of the window of the appellant's apartment. The offense involved was a grave crime of violence. Considering the nature of the crime, the officers reasonably believed the suspects to be armed. Based upon the shots fired at the gas station attendant and the first officer on the scene, information received from the neighbors, the spent .22 caliber shells in the back yard, and the holes in the screen, they had probable cause to believe that the person or persons who had committed the offense were in the apartment which they entered, and that the suspects could escape if not swiftly apprehended. The time of entry was late at night. As *Dorman*, *supra*, notes, although a late entry possibly requires a stricter test of reasonableness, one must consider that it might be more difficult to secure a warrant at night than it would be in the daytime. Indeed in this case one of the officers attempted to get a warrant, but could not contact the magistrate. Under the circumstances the warrantless entry was entirely reasonable and was the only rational thing to do to protect the officers and the community from the potential danger that had been evidenced by the prior shooting. *See Warden v. Hayden*, 387 U.S. 294, 299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782, 787 (1967).

■ Some attention must be given to the remaining factor of peaceable entry discussed in *Dorman*, *supra*. SDCL 23–22–18 provides that a peace officer may break open an outer or inner door or window of a dwelling house or other structure for the purpose of making an arrest if, after notice of his intention he is refused admittance. In this case the officers merely knocked and did not announce their intention. At first blush their failure to announce appears to invalidate their entry because they did not comply with the statutory requirement. *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), which involved a federal statute with the same type of requirement, noted that some state courts had held that justification for this type of statutory noncompliance exists in exigent circumstances. The Court said that an example of such justification would be

when the officers may in good faith believe that they are in peril of bodily harm, citing *Read v. Case*, 4 Conn. 166, 170 (1822). *See also State v. Kietzke*, 85 S.D. 502, 512, 186 N.W.2d 551, 557 (1971); and *People v. Carrillo*, 64 Cal.2d 387, 389, 50 Cal.Rptr. 185, 186–88, 412 P.2d 377, 379 (1966), aff'd 423 F.2d 1228 (9th Cir. 1970), *cert. den.* in 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967). In the present case the officers had reasonable grounds to believe that announcing their intention would increase their peril. They did knock first, and when they received no response one of the officers placed his foot against the bottom of the door and applied pressure. The door opened, breaking the lock on the inside. Although they were not refused admittance, a lack of response can be deemed a refusal. *Kirvelaitis v. Gray*, 513 F.2d 213, 216 (6th Cir. 1975); and *Bosley v. United States*, 138 U.S.App.D.C. 263, 268–69, 426 F.2d 1257, 1262–63 (1970). Therefore, the entry was not in contravention of SDCL 23–22–18, and it complied with the guidelines established in *Dorman, supra.*

■ Appellant's warrantless arrest was also valid. As noted above, SDCL 23–22–7 provides that a peace officer may arrest a suspect without a warrant if a felony has been committed and he has reasonable cause for believing that the arrestee committed it. In this case the officers made a valid entry, and, after discovering the rifle and the spent shells, coupled with the evidence they had observed earlier upon which their probable cause to enter was based, they had reasonable grounds to believe that the appellant and his companion had committed the felony. Therefore, appellant's arrest was valid pursuant to SDCL 23–22–7.

■ The seizure of the rifle and spent shells was also valid under the "plain view" doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971). A search incident to arrest is a well-recognized exception to the warrant requirement. *See State v. Lewis*, 86 S.D. 763, 765, 201 N.W.2d 397, 398 (1972); *State v. Merrill*, 82 S.D. 609, 612, 152 N.W.2d 349, 350 (1967). Although the rifle was not found in the room where the arrest occurred, when the officer looked into the bathroom for other suspects he did not violate the fourth amendment. *People v. Block*, 6 Cal.3d 239, 244, 103 Cal.Rptr. 281, 284, 499 P.2d 961, 965 (1971). His discovery of the rifle was inadvertent. Because his presence in the doorway of the bathroom was legal, he could legally seize the evidence in plain view.[2]

Similarly, the spent shells, which they found in a window well, were in plain view of the officers as they arrested the appellant and his companion. The discovery of the shells was not based upon an exploratory search, but was inadvertent. Therefore, the seizure of the shells was valid also.

■ Although two of the arresting officers returned to the appellant's apartment to take the window screen into custody as evidence, the brief time lapse since the arrest did not invalidate the seizure. The screen had been discovered much earlier, and it was one of the factors upon which probable cause for the officers to enter was based. It was in plain view of the officers throughout their arrest of the suspects, and could have legally been seized at the time of the arrest. Because seizure at the time of the arrest would have been legal and the time interval between the arrest and the seizure was very short, subsequent seizure

2. In *Coolidge* the court discussed the scope of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) as follows:

The "plain view" exception to the warrant requirement is not in conflict with the law of search incident to a valid arrest expressed in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The Court there held that . . . "[t]here is no comparable justification, however, for routinely searching any room other than that in which an arrest

occurs . . . ." *Ibid.* Where, however, the arresting officer inadvertently comes within plain view of a piece of evidence, not concealed, although outside of the area under the immediate control of the arrestee, the officer may seize it, so long as the plain view was obtained in the course of an appropriately limited search of the arrestee. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–66 n. 24, 91 S.Ct. 2022, 2038, n. 24, 29 L.Ed.2d 564, 582–83 n. 24 (1971).

was not in violation of the fourth amendment warrant requirement. *See United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771, 775 (1974);[3] and *State v. Spells*, 88 S.D. 259, 261, 218 N.W.2d 210, 211 (1974).

## CONCLUSION

We conclude, based upon the above analysis, that the appellant's fourth amendment rights were not violated and the trial court did not err in admitting the evidence seized. "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782, 787 (1967). The officers' actions in this case were entirely reasonable under the circumstances. We, therefore, affirm the conviction.

All the Justices concur.

**3.** In upholding the search and seizure in *United States v. Edwards*, the United States Supreme Court referred to *United States v. DeLeo*, 422 F.2d 487, 493 (1970), where the United States Court of Appeals for the First Circuit said:

"While the legal arrest of a person should not destroy the privacy of his premises, it does— for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence." *United States v. Edwards*, 415 U.S. 800, 808–809, 94 S.Ct. 1234, 1239–40, 39 L.Ed.2d 771, 778 (1974).