**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Alan BAYSINGER, Defendant and Appellee.**

**No. 16983.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1990.

Decided May 22, 1991.

Roger A. Tellinghuisen, Atty. Gen., M. Bridget Ryan, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

Rick Johnson, Gregory, for defendant and appellee.

SABERS, Justice (On reassignment).

This is a discretionary appeal from an order granting Alan Baysinger's (Alan) pretrial motion to suppress evidence. We reverse and remand.

## FACTS

In January 1989, a confidential informant told the Jerauld County sheriff that he had overheard a conversation between Tom Baysinger (Tom), Alan's cousin, and "another guy" regarding the receipt of some cocaine through the mail in Huron, South Dakota. As a result of a subsequent contact between the sheriff and the United Parcel Service (UPS), a package addressed to Tom was intercepted at the UPS office in Huron. Unknown to law enforcement, a UPS representative opened the package and discovered a white powdery substance inside. UPS notified the Huron police of the interception of the package and discovery of the powder and the police took the package into custody.[1]

On Monday, January 30, 1989, Doug Lake (Lake), an agent for the South Dakota Division of Criminal Investigation in Pierre, received a call from the Huron police. The police requested Lake's assistance with a controlled delivery of the cocaine to Tom's residence. Lake immediately flew to Huron where he met with local law enforcement officials. The package they had confiscated was taken back to the Huron UPS office where Lake field tested the powder in the package. The powder tested positively as cocaine. Lake removed all but two grams of the cocaine from the package and replaced it with a vitamin B compound. The package was then resealed to its original condition.

Lake borrowed a UPS uniform and truck and attempted to deliver the package to Tom's residence. He was followed by a surveillance team that videotaped the attempted delivery. No one answered the door so Lake left a note on the door advising that the package could be picked up at

the UPS office. Lake then took the package back to the UPS office where he waited to see if someone would pick it up. Meanwhile, the surveillance team continued to monitor Tom's home where they filmed Alan stopping at the house and reading the UPS note on the door.

Later that same day, Tom came into the UPS office, signed for his package and left. Lake followed him to the parking lot where he saw him get into a car with an individual later identified as Alan, and drive away.

After Tom picked up the package of cocaine, Lake prepared an affidavit and request for a warrant to search Tom's residence. Lake, accompanied by other law enforcement officers, arrived at the house at about 6:00 p.m. Alan was standing in the living room and his wife was in the kitchen with Tom's wife and another woman. When Lake knocked on the door, Tom's wife answered. Alan heard Lake ask for Tom and Tom's wife went to get him.

When Tom got to the door, Lake handed him the search warrant and advised him that he was under arrest. Lake turned Tom over to another officer and entered the residence, advising that he had a warrant. Lake saw Alan standing in the living room and recognized him as the person who had accompanied Tom to the UPS office to pick up the package of cocaine. Lake took Alan into custody and turned him over to another officer who pushed Alan to the wall and handcuffed him.

At about this time, Lake heard an officer from outside yell that someone was in the bedroom. Lake proceeded to the bedroom where he saw Tom's wife attempting to hide the cocaine in a closet. There was white powder scattered throughout the room. Lake told the woman to "freeze" and placed her under arrest. In the meantime, Alan had been searched and a vial of cocaine found in one of his pockets.[2] Offi-

---

1. The validity of the search and seizure of the package is not at issue in this appeal and we do not question or address its proriety in this decision.

2. The search of the house pursuant to the warrant produced a large number of items of paraphernalia normally used in the distribution and ingestion of cocaine.

cers outside the residence also discovered the empty UPS package in Tom's car.

Alan was later charged with one count of possession with intent to distribute the cocaine found at Tom's residence, one count of possession of the cocaine at the same residence and one count of possession of cocaine relating to the vial found in his pocket. Alan filed a motion to suppress the evidence seized from his pocket for lack of probable cause to search, because the search was not a frisk and because the search was not necessary and incidental to his arrest. After a hearing on Alan's motion, the trial court entered findings of fact, conclusions of law and an order suppressing the evidence seized from his pocket. We subsequently granted state's petition for allowance of an intermediate appeal of the suppression order.

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SUPPRESSING THE EVIDENCE SEIZED FROM ALAN'S POCKET?

State argued before the trial court that the evidence seized from Alan's pocket was seized as the result of a valid search incident to his arrest. However, the trial court determined that Lake did not have probable cause to search Alan and, accordingly, suppressed the evidence seized from his pocket. On appeal, state advances a series of arguments to justify Alan's arrest and to demonstrate that the trial court was clearly erroneous in its probable cause determination. In essence, state argues that Alan's arrest was valid and, therefore, the evidence taken from his pocket was seized as a result of a valid search incident to his arrest.

## STANDARD OF REVIEW

■ A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. *State v. Pfaff,* 456 N.W.2d 558 (S.D.1990). Similarly, a trial court's finding concerning probable cause for a warrantless arrest will not be overturned unless clearly erroneous.

*U.S. v. Woolbright,* 831 F.2d 1390 (8th Cir. 1987); *U.S. v. McGlynn,* 671 F.2d 1140 (8th Cir.1982). This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. *State v. Corder,* 460 N.W.2d 733 (S.D.1990). In making this determination, we review the evidence in a light most favorable to the trial court's decision. *Id.*

■ To disturb a trial court's ultimate decision to suppress evidence, this court must find that an abuse of discretion has occurred. *Pfaff, supra.* This refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Id.* In this regard, we do not determine whether we would have made a like decision but only whether a judicial mind, considering the law and facts, could have reached a similar decision. *Id.*

## 1. VALIDITY OF ARREST BASED ON COMMISSION OF OFFENSE IN LAKE'S PRESENCE

■ SDCL 23A–3–2(1) provides that, "[a] law enforcement officer may, without a warrant, arrest a person ... [f]or a public offense, other than a petty offense, committed or attempted in his presence[.]" State contends the actions of Tom's wife in attempting to hide the cocaine in the bedroom while Alan was being arrested provides circumstantial evidence that Alan was in possession of the cocaine. *See, State v. Wellner,* 318 N.W.2d 324 (S.D. 1982) (possession need not be exclusive and may be shared with others). *See also, State v. Winckler,* 260 N.W.2d 356 (S.D. 1977) (circumstantial evidence can be used to demonstrate possession). Accordingly, state argues that Alan was committing a possession offense in Lake's presence justifying his arrest under SDCL 23A–3–2(1).

Under this theory, it would follow that Alan's pockets were validly searched incident to his arrest. *See, State v. Klingler*, 84 S.D. 466, 173 N.W.2d 275 (1969).

This court has not previously addressed the validity of an arrest under SDCL 23A–3–2(1). However, in *State v. Thompson*, 295 N.W.2d 8 (S.D.1980), we did determine the validity of a DWI arrest under then SDCL 23–22–7(1), a precursor to SDCL 23A–3–2(1).[3] Similar to SDCL 23A–3–2(1), SDCL 23–22–7(1) (1967) provided that, "[a] peace officer may, without a warrant, arrest a person ... [f]or a public offense committed or attempted in his presence[.]" In *Thompson*, the defendant contended his arrest was invalid because the offense was not committed in the presence of the arresting officer. Rejecting that contention, we observed:

> The conclusive evidence of defendant's intoxication appeared after the automobile stopped and the sheriff observed defendant's condition. In addition to receiving the radio report concerning defendant's condition, the sheriff observed defendant's driving and his intoxicated condition. *As a result of his sensory perceptions alone* the sheriff had a basis to arrest defendant without a warrant; the offense was committed in the sheriff's presence.

*Thompson*, 295 N.W.2d at 10 (emphasis added).

In reaching the above conclusion, we relied on the decision of the Minnesota Supreme Court in *State v. Dax*, 290 Minn. 546, 188 N.W.2d 422 (1971). In *Dax*, the Minnesota Court also explored the validity of a DWI arrest under an "in the presence" statute similar to SDCL 23A–3–2(1). In discussing the validity of the arrest under the statute, the Minnesota Court stated:

> [A]n arrest without a warrant may not lawfully be made unless the acts constituting the offense are committed or attempted in the presence of the arresting officer.... While the circumstances of

each case are usually determinative, all that is required by the statute in this case is that the officer (1) become aware, *as a result of his sensory perception*, of the act of driving and of defendant's intoxication; and (2) have a reasonable basis to infer that defendant was in fact driving the vehicle while he was under the influence.

*Dax*, 188 N.W.2d at 423 (emphasis added) (citations omitted).

*Thompson* and *Dax* make clear that for an arrest to be valid under an "in the presence" statute such as SDCL 23A–3–2(1), acts or circumstances taking place within the sensory perceptions of the arresting officer must be sufficient to allow the officer to infer that the defendant is committing a crime in his presence. In short, "[a]lthough a person may actually be committing a criminal offense, it is not committed in the presence of an officer ... if the officer does not know it." *State v. Pluth*, 157 Minn. 145, 195 N.W. 789, 791 (1923). Further, although *Dax* uses language merely requiring an arresting officer to have a "reasonable basis to infer" that the defendant is committing an offense, we equate this "reasonable basis" with probable cause. Anything less would violate the Fourth Amendment to the United States Constitution and Art. VI, § 11 of the South Dakota Constitution. As we said in *State v. Max*, 263 N.W.2d 685, 687 (S.D. 1978):

> The fourth amendment to the United States Constitution and Article VI, § 11 of the South Dakota constitution both provide that people have the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Warrantless arrests and searches, therefore, are unconstitutional, unless there is a showing by those who seek exemption from the requirement that their actions were reason-

---

**3.** SDCL 23–22–7(1) was repealed during the 1978 legislative session. *See,* 1978 S.D.Sess.L.   ch. 178, § 577.

able, *based on probable cause*, and that the exigencies of the situation made the course imperative. (emphasis added).

Based upon the foregoing authorities, we hold that for an arrest to be valid under SDCL 23A–3–2(1), the arresting officer must become aware, as a result of his sensory perceptions, of acts or circumstances sufficient to give him probable cause to believe that a defendant is committing a criminal offense in his presence. *See, Garske v. United States*, 1 F.2d 620 (8th Cir.1924) (peace officers may arrest without a warrant for a crime which they have probable cause to believe is being committed in their presence).

■ Applying the above standard in the instant case, we fail to identify any evidence or testimony concerning events transpiring within Lake's sensory perceptions at the time of Alan's arrest sufficient to give Lake probable cause to believe Alan was in possession of cocaine. To constitute possession of a controlled substance, the accused must be aware of the presence of the drug. *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551 (1971). When Alan was arrested there was nothing in his actions to indicate to Lake that he was aware of the cocaine in the nearby bedroom. In contrast with the open possession of the powder by Tom's wife and her frantic attempt to conceal it, Alan made no utterance or furtive gestures toward the bedroom and there is no indication that he could even see into the bedroom from his position in the living room. Moreover, as we perceive the testimony, Lake himself was not even aware that the cocaine was in the bedroom until immediately after he took Alan into custody. Probable cause to arrest, "is not determined with the benefit of hindsight, it is determined by those *factors present at the time of the arrest* ...." *Matter of Hopewell*, 376 N.W.2d 812, 815 (S.D.1985) (emphasis added). Thus, on these facts we cannot state that Lake knew Alan was committing a possession offense in his presence. Although Alan may have been

in possession of cocaine, Lake could not know that through the use of his sensory perceptions alone. Accordingly, we hold that Alan's arrest was not justified under SDCL 23A–3–2(1). Since the arrest was not justified under this statute neither was the search of Alan's pockets incident to the arrest. *Klingler, supra*.

## 2. VALIDITY OF ARREST BASED ON PROBABLE CAUSE

SDCL 23A–3–2(2) provides that, "[a] law enforcement officer may, without a warrant, arrest a person ... [u]pon probable cause that a felony or Class 1 misdemeanor has been committed and the person arrested committed it, although not in the officer's presence." State contends that the facts known to Lake and other law enforcement officers at the time Alan was arrested were sufficient to provide probable cause for his arrest under SDCL 23A–3–2(2). Therefore, state asserts the trial court's probable cause determination was clearly erroneous and that Alan's pockets were validly searched incident to his arrest. *Klingler, supra*. We agree.

■ Probable cause to arrest exists where the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a belief by a man of reasonable caution that a suspect has committed or is committing an offense. *Max, supra; State v. Stuck*, 434 N.W.2d 43 (S.D.1988). Mere suspicion by an officer is not enough. *State v. Glick*, 87 S.D. 1, 201 N.W.2d 867 (1972). However, probable cause deals with probabilities that are not technical but only the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act. *Id.*

■ Further, in reviewing the issue of probable cause:

[W]e do not approach [the] facts separately ... "but rather we view the action of the arresting officers on the basis of the cumulative effect of such facts in the

totality of the circumstances." These facts do not need to be solely those known by the arresting officer. "[I]n the operation of an investigative or police agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause. The arresting officer himself need not possess all of the available information." *United States v. Green*, 525 F.2d 386, 390 (8th Cir.1975) (citations omitted).

■■■ The trial court's central concern in this case was with the requirement that probable cause must be particularized with respect to the person arrested. *See, Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to arrest that person. *See Id.* While we recognize the legitimacy of the trial court's concern with these rules, we find the totality of objective facts known to law enforcement in this case is sufficient to distinguish it from *Ybarra*.

■■■ In *Ybarra*, law enforcement officers obtained a search warrant to search a tavern and a named bartender who was suspected of selling heroin on the premises. When the officers entered the tavern to execute the warrant they advised all the customers present that they were going to conduct a cursory search for weapons. In the process of frisking Ybarra, an officer felt a cigarette pack with objects in it. The officer did not immediately remove the pack but proceeded to frisk the other customers. After finishing with all the customers, the officer returned to Ybarra and retrieved the cigarette pack from Ybarra's pocket. Inside the pack he found six tinfoil packets of heroin. Subsequently invalidating the search, the Supreme Court specifically noted that when the police executed the warrant they knew nothing in particular about Ybarra except that he was present with other customers in a public tavern. The Court further noted that the police did not recognize Ybarra and had no reason to believe that he had committed, was committing, or was about to commit any criminal offense.

The key factor distinguishing this case from *Ybarra* and similar probable cause cases is the number of objective facts known to law enforcement at the time they entered Tom's residence and placed Alan under arrest. Law enforcement knew that Tom Baysinger and another man had conspired to receive cocaine through the mail in Huron. Law enforcement knew that Tom had, in fact, received a package of cocaine through UPS in Huron. Law enforcement knew that on the same day an attempt was made to deliver that package of cocaine to Tom, Alan stopped at Tom's residence and read the note that the package could be picked up at the UPS office. Law enforcement knew that shortly thereafter Alan accompanied Tom to the UPS office to pick up the package of cocaine and left with Tom in the same automobile. Finally, when law enforcement entered Tom's residence a short time later, armed with probable cause to believe there was cocaine in the residence, and saw Alan standing in the living room, they clearly had cause to believe he was involved in the receipt and possession of the cocaine. That Alan was not arrested for his mere presence in Tom's residence is demonstrated by the fact that two other persons in the residence at the same time were not arrested or searched.

Although the above facts, standing alone, might not be sufficient to sustain a conviction of Alan for possession of cocaine, they were clearly sufficient to warrant a belief by a man of reasonable caution that Alan was involved in the commission of the crime. Accordingly, based upon the entire record in this case, we are left with a definite and firm conviction that a mistake has been made and that the trial court's determination of lack of probable cause is clearly erroneous. The arrest of Alan was adequately supported by probable cause and was, therefore, valid. It follows that the search of Alan's pockets was a valid search incident to his arrest.

*Klingler, supra.* It also follows that the trial court abused its discretion in suppressing the evidence seized from Alan's pocket consisting of the vial of cocaine.

State raises several additional arguments in support of a reversal of the trial court's suppression order which we deem unnecessary to address in this decision.

Reversed and remanded.

MILLER, C.J., and MORGAN, Retired Justice, concur.

WUEST and HENDERSON, JJ., concur in part and dissent in part.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted did not participate.

WUEST, Justice (concurring in part and dissenting in part).

I concur with the majority on the "in the presence" argument, but dissent on the probable cause determination. In *Ybarra*, 444 U.S. at 91, 100 S.Ct. at 342, the United States Supreme Court held:

> [A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search *or seizure of a person* must be supported by probable cause *particularized with respect to that person.* This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. (Citation omitted) (emphasis added).

The trial court reviewed all objective facts known to law enforcement at the time they arrested Alan and concluded those facts were insufficient to constitute probable cause. The trial court considered Alan's stop at Tom's residence. The videotape is inconclusive. It shows Alan standing at the door of the house for a few moments and then returning to his vehicle. The view of Alan in the doorway is partially (almost one-half) obscured by a tree, and the note placed on the door by Lake cannot be seen. Although Lake saw Alan riding in the same car with Tom after he picked up the cocaine, the trial court found, "[t]here was no evidence to suggest that the defendant, Alan Baysinger, knew of the contents of the package[.]"

The trial court determined that these facts established nothing more than Alan's mere propinquity to Tom and concluded this was insufficient under *Ybarra* to establish probable cause to arrest Alan. Although the police knew from their informant that Tom had discussed the drug delivery with another unidentified person, the trial court could well have determined that Lake's prior observations of Alan amounted only to mere suspicion, not probable cause.

Certainly the trial court's findings are not *clearly* erroneous. Indeed, we must review the evidence in the light most favorable to the trial court's decision. *Corder*, 460 N.W.2d at 736. And regarding the trial court's suppression of evidence, we are not to determine whether we would have made a like decision, but only whether a judicial mind, considering the law and facts, could have reached a similar decision. *Pfaff*, 456 N.W.2d at 561.

HENDERSON, Justice (concurring in part; dissenting in part).

### COMMITTING OFFENSE IN PRESENCE OF OFFICER NOT ESTABLISHED

I join all of my Brothers on issue one that the validity of the arrest herein was not based on the commission of an offense which transpired within Lake's "sensory perceptions" at the time of appellee/Baysinger's arrest. In essence, the State failed to prove that Baysinger was committing an offense in Lake's presence. Therefore, there was not probable cause to believe that Baysinger was in possession of cocaine.

## NO PROBABLE CAUSE ESTABLISHED

On issue two, I respectfully dissent. It appears that the majority's opinion, in reversing the trial court, is bottomed upon the trial court's findings being clearly erroneous. I cannot agree to this conclusion, believing that those disposed to the majority's viewpoint have substituted their judgment for the trial court's judgment as to both the existence of the facts and then applying those facts to the pertinent law. Majority does not give the trial court's findings proper deference. We must review the evidence in a light most favorable to the trial court's decision on factual findings. *State v. Wilson*, 297 N.W.2d 477 (S.D.1980). This being a discretionary appeal, our action is to be governed by SDCL 23A–32–9 which expresses:

> On appeal from a judgment the Supreme Court may review any order, ruling, or determination of the trial court, involving the merits and necessarily affecting the judgment and appearing upon the record including an order denying a new trial, and whether any such order, ruling, or determination is made before or after judgment. When the appeal is from an order subject to appeal, the Supreme Court may review all matters appearing on the record relevant to the question of whether the order appealed from is *erroneous.* (emphasis supplied mine).

Our scope of review *is not de novo.* A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. *State v. Pfaff,* 456 N.W.2d 558 (S.D.1980). *See, also, U.S. v. Woolbright,* 831 F.2d 1390 (8th Cir.1987), for the holding that a trial court's finding concerning probable cause to make a *warrantless* arrest will not be reversed unless it is clearly erroneous. As a reviewing court, under *Pfaff,* we are to determine if the findings are clearly against the weight of testimony. Can we say this? I think not.

The majority opinion cites *State v. Glick,* 87 S.D. 1, 201 N.W.2d 867 (1972) for the proposition that a mere suspicion by an officer is not enough to establish probable cause, but seemingly appears to disregard it. We are not the triers of the fact. At the conclusion of the opinion, the majority renders its version of the facts. You, the reader, have now read them. However, I wish to point out the trial judge's observations of the state's argument, at the trial court level, which is very insightful into the mind and legal rationale of the trial court:

1. Alan Baysinger's "hurried behavior" at the Tom Baysinger residence when he observed the note left by UPS. (NOTE: This behavior was video taped; however, no evidence was introduced to indicate that Agent Lake had observed that video prior to the arrest, nor that other officers who observed such "behavior" transmitted it to him.)

2. Alan Baysinger accompanied Tom Baysinger to the UPS Center immediately thereafter to pick up the package of dope. (NOTE: Again the State fails to mention that only Tom Baysinger entered the UPS Center and that the package in and of itself was innocently wrapped. Additionally, while subsequent evidence showed that the package was opened in the Baysinger automobile, the evidence indicates that Agent Lake was not aware of that at the time of the arrest.

3. Alan Baysinger was at the Tom Baysinger residence at the time of the search. (NOTE: The cocaine was being cut in the bedroom, and all evidence indicates that Alan Baysinger was in the livingroom.)

Therefore, I would affirm the trial court in its entirety, breathing life into settled law of this state that considering the law and facts, a judicial mind could have reached a similar decision. *Peterson v. Peterson,* 434 N.W.2d 732 (S.D.1990).