#24998-r-DG

**2009 SD 92**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF
H.L.S.,
ALLEGED DELINQUENT CHILD.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE VINCENT A. FOLEY
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

MEGHAN N. DILGES
Assistant Attorney General
Pierre, South Dakota                    Attorneys for appellee
                                        State of South Dakota.


PATRICK T. PARDY of
Mumford, Protsch and Pardy, LLP
Madison, South Dakota                   Attorneys for appellant, H.L.S.

\* \* \* \*

                                        CONSIDERED ON BRIEFS
                                        ON AUGUST 24, 2009

                                        OPINION FILED **10/28/09**

#24998

GILBERTSON, Chief Justice

[¶1.]        H.L.S. appeals the denial of her motion to suppress a urine sample obtained after she was arrested without a warrant on suspicion of possession and ingestion of marijuana. We reverse.

**FACTS**

[¶2.]        On April 14, 2008, the South Dakota Division of Criminal Investigation (DCI) and other law enforcement executed a valid search warrant on an apartment in Huron, South Dakota. The apartment was at that time rented to Amelia Wipf (Wipf). The search warrant permitted the premises to be searched, a search of both Wipf and Kunta Miles, and collection of urine samples from both individuals. At the time the warrant was executed, law enforcement found six individuals in the apartment. Among those six individuals was H.L.S., age seventeen.

[¶3.]        DCI Agent Josh Bobzien was a part of the law enforcement team that executed the search warrant. Due to a previous injury, he was wearing a boot cast and was unable to enter the premises until after the entry team had secured it. When he entered the living room, he noted H.L.S. was seated and handcuffed along with the other five individuals in the living room.

[¶4.]        Bobzien was informed by other law enforcement officers that marijuana stems and seeds had been found in plain view on an end table in the living room, and that additional flakes were found elsewhere in the living room. In addition, officers located a paper bag in the living room, also in plain view, in which marijuana stems, seeds, and the tobacco remains of a hollowed-out cigar were

found, which indicated a cigar had been used as a blunt (a cigar in which the tobacco has been removed and replaced with marijuana). Bobzien asked a general question of all six individuals present, including H.L.S., as to who was the owner of the marijuana. None of the six claimed ownership, and none volunteered the identity of the owner.

[¶5.] Bobzien arrested H.L.S. along with the other five individuals present. H.L.S. was transported to the Huron Regional Correction Center where she was compelled to give a urine sample. H.L.S.'s urine tested positive for tetrahydrocannabinol (THC), the essential active component in marijuana. H.L.S. was charged with one count of possessing two ounces or less of marijuana in violation of SDCL 22-42-6, and one count of ingesting a substance for purposes of becoming intoxicated in violation of SDCL 22-42-15.

[¶6.] H.L.S. moved to suppress the results of the urine analysis. At the suppression hearing, the parties stipulated that the urine analysis was not compelled under the terms of the search warrant. Instead, both parties stipulated that the theory under which law enforcement compelled H.L.S. to provide a urine sample was based on her presence at the apartment in which the marijuana stems, seeds, and flakes were found in plain view, and on the basis of the contents of the paper bag found in the living room.

[¶7.] At the hearing, Bobzien was the only law enforcement officer to testify who had been present at the scene. Bobzien was not asked and he did not testify as to where H.L.S. was in relation to the marijuana and paper bag at the time the entry team entered the apartment. Nor was Bobzien asked whether H.L.S. was in

the living room when the entry team entered the apartment to execute the warrant. Bobzien was asked but was unable to testify as to how long H.L.S. had been in the apartment before the search warrant was executed. All that Bobzien could testify to was that when he entered the apartment he observed H.L.S. seated in the living room and in handcuffs and that at that time she was sitting approximately where the contraband had been found in plain view. Bobzien testified that he did not ask H.L.S. individually whether she knew to whom the marijuana belonged.

[¶8.]     Bobzien's testimony with regard to H.L.S.'s physical location during the execution of the search warrant was as follows:

> Q.    And when did you first encounter H.L.S.?
> A.    She was at the residence [where the search was conducted].
> . . .
> Q.    And so specifically, where and when did you encounter H.L.S.?
> A.    I believe when I – At the time, I had a walking boot. I was physically handicapped. The entry team made entry into the residence, and once the residence was secured I entered into the apartment, and I believe she was sitting in the living room when I was there.
> Q.    And what, if any, evidence of a drug-related nature was found in the area where H.L.S. was?
> A.    During the search, officers located a paper bag with marijuana stems and marijuana flakes in the paper bag, and also in the bag was tobacco, and it appeared that they took tobacco out of a cigar and placed it in there. There [were] also marijuana stems and seeds in the living room on the end table, and marijuana flakes also located in the living room, and that was the evidence that was located in the living room approximately where she was sitting.
> . . .
> Q.    and as a result of the drug-related items found near H.L.S, what did you do?
> A.    Nobody wanted to claim the drugs, so I placed everybody under arrest for possession.

[¶9.]     The circuit court denied H.L.S.'s motion. In its findings of fact, the circuit court noted that "Bobzien, relying on his training and experience as a law

enforcement officer, determined that the marijuana found at the apartment combined with the Defendant's close proximity to that marijuana, made it probable that the Defendant smoked marijuana." It also concluded that Bobzien's experience as an officer, his sensory observations of H.L.S. in the common area where the drugs were found, and her proximity to the marijuana and the paraphernalia, established probable cause to believe that there had been drugs used by H.L.S., as well as the other individuals present at the time the search warrant was executed. The circuit court denied H.L.S.'s motion to suppress.

[¶10.] H.L.S. appeals raising one issue:

> Whether the circuit court erred in finding there was probable cause for the arrest of H.L.S.[1]

## STANDARD OF REVIEW

[¶11.] We apply the de novo standard of review when a defendant claims the circuit court erroneously denied a motion to suppress evidence based on an alleged violation of a constitutionally protected right. State v. Wendling, 2008 SD 77, ¶8, 754 NW2d 837, 839 (quoting State v. Labine, 2007 SD 48, ¶12, 733 NW2d 265, 268-69). Under the de novo standard, "we review the circuit court's findings of fact under the clearly erroneous standard, [and] we give no deference to its conclusions of law [.]" Id. (quoting State v. Condon, 2007 SD 124, ¶15, 742 NW2d 861, 866).

---

1. H.L.S. offers no argument other than that her arrest was without probable cause. As such, H.L.S. appears to concede that if the arrest satisfied the requirements of the Fourth Amendment, the urine sample was legally obtained as a search incident to a valid arrest.

"Similarly, a trial court's finding concerning probable cause for a warrantless arrest will not be overturned unless clearly erroneous." State v. Hanson, 1999 SD 9, ¶10, 588 NW2d 885, 889 (citing United States v. Woolbright, 831 F2d 1390 (8thCir 1987); United States v. McGlynn, 671 F2d 1140 (8thCir 1982)). As this Court has often noted:

> This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. State v. Corder, 460 NW2d 733 (SD 1990). In making this determination, we review the evidence in a light most favorable to the trial court's decision. *Id.*

State v. Baysinger, 470 NW2d 840, 843 (SD 1991).

## ANALYSIS AND DECISION

[¶12.] H.L.S. argues on appeal that she was arrested without probable cause and that the search incident to her arrest, that is the urine sample, was obtained in violation of her Fourth Amendment rights. H.L.S. argues the arrest was not valid under either SDCL 23A-3-2(1) or -2(2).[2] H.L.S. argues that under SDCL 23A-3-2(1) Bobzien did not observe H.L.S. commit an offense. Under SDCL 23A-3-2(2), H.L.S.

---

2. SDCL 23A-3-2 provides:

> A law enforcement officer may, without a warrant, arrest a person:
>
> (1) For a public offense, other than a petty offense, committed or attempted in his presence; or
>
> (2) Upon probable cause that a felony or Class 1 misdemeanor has been committed and the person arrested committed it, although not in the officer's presence.

argues Bobzien did not have sufficient probable cause to believe H.L.S. had committed a crime. H.L.S. argues she was arrested "because she was present at a residence in which the agent was serving a search warrant." H.L.S. further argues that under this Court's holding in *Baysinger*, 470 NW2d 840, her proximity to others "independently suspected of criminal activity does not, without more, give rise to probable cause to arrest that person."[3]

---

3. In *Baysinger*, 470 NW2d 840, 842, officers obtained a search warrant for the home of Tom Baysinger, the defendant's cousin, based on a tip from United Parcel Service that a package with cocaine was to be delivered to Tom's home. The defendant was observed by police reading a note from UPS attached to Tom's front door advising when the package could be retrieved, and was also observed with Tom at the UPS office picking up the package. The defendant was present at the time the warrant was served. However, there were no drugs present in the room in which the defendant was apprehended. Instead, Tom's wife was in a bedroom with the door closed attempting to hide the cocaine. The cocaine was not in the defendant's view or presence at the time officers arrested him. A search of the defendant subsequent to the warrantless arrest revealed a vial of cocaine in his pocket. The defendant moved to suppress the vial of cocaine, arguing under SDCL 23A-3-2(1) that there were no facts known to the arresting officer gained through the officer's sensory perception alone that indicated the defendant had committed the crime of possession in the officer's presence. The circuit court granted the defendant's motion to dismiss finding that under SDCL 23A-3-2(1) the defendant's mere proximity to others independently suspected of criminal activity was not enough. This Court affirmed, concluding under SDCL 23A-3-2(1) that mere proximity to others was insufficient to support the arrest without facts within the officer's knowledge gained by his own perceptions to indicate the defendant was aware of the presence of the cocaine. *Id.* 845. However, this Court ultimately reversed the motion to suppress the evidence holding there were facts sufficient to establish probable cause for an arrest under SDCL 23A-3-2(2) based on police officers' observations of the defendant reading the UPS notice and going to UPS with Tom to retrieve the package. This Court held that the cocaine was found during a search incident to a valid arrest under SDCL 23A-3-2(2). *Id.* 846-47.

[¶13.]     The State argues that Bobzien had sufficient probable cause to arrest H.L.S. under SDCL 23A-3-2(2) based on the presence of the marijuana stems and seeds found on an end table in the living room where the six occupants were seated, the flakes found elsewhere in the living room, and evidence of a blunt used to smoke marijuana found in the paper sack in the living room.  The State contends that H.L.S. was not arrested due to her proximity to other persons "independently" suspected of criminal activity, but rather H.L.S. was suspected of criminal activity due to her proximity to and ability to exercise control over the marijuana that was present in the room at the time the search warrant was executed.

[¶14.]     The text of the Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

US Const. amend. IV.  "This prohibition against unreasonable searches requires generally the issuance of a warrant by a neutral judicial officer based on probable cause prior to the execution of a search or seizure of a person."  State v. Mattson, 2005 SD 71, ¶29, 698 NW2d 538, 548 (citing State v. DeLaRosa, 2003 SD 18, ¶7, 657 NW2d 683, 685 (citing Terry v. Ohio, 392 US 1, 20, 88 SCt 1868, 1879, 20 LEd2d 889, 905 (1968))).  We, however, recognize an exception for a warrantless arrest based on probable cause.  Baysinger, 470 NW2d at 845 (citing SDCL 23A-3-2).

[¶15.]     Probable cause to arrest without a warrant "exists where the facts and circumstances within the arresting officers' knowledge and of which they have

reasonably trustworthy information are sufficient in themselves to warrant a belief by a [person] of reasonable caution that a suspect has committed or is committing an offense." *Id.* When examining probable cause we use a "totality of the circumstances" approach in which we must keep in mind that the concept turns on "probabilities that are not technical but only the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *Id.* Our totality of the circumstances approach to examining probable cause requires us to look at all the facts present before the detaining officer to determine whether a "'particularized and objective basis' for suspecting legal wrongdoing" existed at the time of the arrest. State v. Noteboom, 2008 SD 114, ¶6, 758 NW2d 457, 459. We allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" State v. Haar, 2009 SD 79, ¶23, 772 NW2d 157, 167 (quoting United States v. Arvizu, 534 US 266, 273, 122 SCt 744, 750-51, 151 LEd2d 740 (2002)). Furthermore, the collective knowledge of the investigative agency and all the objective facts are the criteria used to assess probable cause. *Baysinger*, 470 NW2d at 845-46.

[¶16.] We require that probable cause be particularized with respect to the person arrested. *Hanson*, 1999 SD 9, ¶15, 588 NW2d at 890 (citing Ybarra v. Illinois, 444 US 85, 91, 100 SCt 338, 342, 62 LEd2d 238, 245 (1979); *Baysinger*, 470 NW2d at 846)). "A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to arrest that

person." *Id.* (quoting *Baysinger*, 470 NW2d at 846). Probable cause can be satisfied, however, when an individual is found, along with others, in the presence of drugs and none of those present claims ownership if the person is aware of the character and presence of the drugs. *Id.* This is because "possession need not be exclusive. It may be shared with others." *Id.* ¶16 (quoting State v. Kietzke, 85 SD 502, 506, 186 NW2d 551, 554 (1971)).

[¶17.] For conviction under a charge of possession under SDCL 22-42-6, the prosecution must present proof beyond a reasonable doubt that the individual charged knew of the presence and character of the drug, and intentionally and consciously possessed the drug. *Id.* However, we do not require such a high degree of certainty in order to make a warrantless arrest. *Baysinger*, 470 NW2d at 846. We require "sufficient facts to warrant a belief by a [person] of reasonable caution that [the defendant] was involved in the commission of the crime." *Id.*

[¶18.] H.L.S. argues that Bobzien had no facts within his knowledge that indicated particularized suspicion that H.L.S. had possessed and/or consumed marijuana. H.L.S. also argues that all Bobzien knew at the time of the arrest, according to his in-court testimony, was that H.L.S. was present in the apartment at the time the search warrant was executed. H.L.S. notes that Bobzien only testified to H.L.S.'s presence in the apartment at the time the search warrant was executed, and that he observed her physical location in reference to the contraband *after* she had been placed in handcuffs. She further argues that her presence in the apartment without more did not provide sufficient particularized facts within Bobzien's knowledge for him to conclude H.L.S. was aware of the presence of the

#24998

marijuana. H.L.S. argues Bobzien needed more facts to draw that conclusion such as where H.L.S. was in the living room at the time of the arrest, her location relative to the marijuana stems, seeds, flakes, and drug paraphernalia, and how long she had been in the apartment before the warrant was served. Without sufficient facts for Bobzien to conclude H.L.S. was aware of the presence and character of the marijuana, H.L.S. argues that Bobzien could not reasonably conclude that H.L.S. intentionally and consciously possessed it.

[¶19.] The State argues that H.L.S. was arrested because the contraband was found in the apartment in plain view in the same room in which H.L.S. was located. The State further argues that once the occupants of the apartment declined to answer Bobzien's question regarding the ownership of the marijuana, Bobzien had individualized suspicion as to each of the six occupants. The State concludes that H.L.S.'s arrest was based on more than "mere propinquinty." The State argues that Bobzien as one of the officers present on the scene is charged with the collective knowledge of all the officers present during the search and arrest.

[¶20.] However, there is no testimony in the record from Bobzien or anyone else as to what other facts he may have been told by the entry team officers regarding H.L.S.'s presence and location relative to the contraband at the time they first entered the apartment. According to the record, Bobzien was informed by the entry team that the marijuana stems, seeds and flakes were found in plain view and in the living room by the officers several minutes before Bobzien entered the apartment. However, H.L.S.'s location relative to the contraband at the time those officers first entered the apartment was not a part of Bobzien's testimony at the

suppression hearing. The transcript indicates that Bobzien testified he saw H.L.S. in handcuffs and seated on the couch in the immediate vicinity of the contraband once he had entered the apartment. Without the critical information as to where H.L.S. was at the time the entry team officers first entered, there was nothing in the record to indicate Bobzien had sufficient facts to independently suspect H.L.S. knew of the presence of the contraband. As such, all that Bobzien could conclude was that H.L.S. was present in the apartment at the same time as the marijuana. The State's argument that Bobzien possessed sufficient cumulative facts upon which he could draw an inference that H.L.S. knew of the presence and the character of the drug fails for lack of any facts in the record that may have been relayed to Bobzien by the entry team as to H.L.S.'s location. While such facts may have been known to Bobzien, those facts were never entered into the record at the suppression hearing.

[¶21.] Without the critical facts as to where H.L.S. was at the time the entry team officers entered the apartment, which may well have been known to Bobzien at the time of the arrest, there is nothing to support a finding of probable cause that H.L.S. had the requisite awareness of the presence and the character of the contraband. Without that awareness, it was not possible for a reasonable officer to conclude that H.L.S. intentionally and consciously possessed the drug in common with the other occupants of the apartment. Therefore, law enforcement did not have sufficient probable cause for H.L.S.'s warrantless arrest.

[¶22.] Reversed.

#24998

[¶23.] KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.